(20 Misc. Rep. 177.)

OSTROM v. GREENE et al.

(Supreme Court, Trial Term, Sullivan County. April, 1897.)

1. ASSOCIATIONS—MANAGEMENT—INTERVENTION OF COURTS.
    The right to the possession of the funds, books, and papers of a voluntary association is such an interest in property as will give the courts jurisdiction of a controversy between the members.

2. SAME—MEETINGS—QUORUM.
    Where a voluntary association composed of an indefinite number of members has no rule prescribing the number that shall constitute a quorum, but has been accustomed to hold its meeting pursuant to notices published in the newspapers, and to transact business thereat, regardless of the num-

ber in attendance, the members attending any such meeting constitute a quorum.

3. SAME—WITHDRAWAL OF MINORITY.

Where the members attending a meeting constitute a quorum, the withdrawal from a meeting of a minority of such members because of dissatisfaction with the action of the majority does not affect the right of those remaining to proceed with the transaction of business.

4. SAME—POWERS OF OFFICERS.

The president of an association cannot prevent the transaction of business at a meeting, by refusing to put motions, or by leaving the meeting.

5. SAME—PARLIAMENTARY PROCEDURE.

Proceedings are not affected by failure to observe parliamentary rules, where the association was not acting under parliamentary regulations.

6. SAME—WHEN VICE PRESIDENT MAY ACT.

The vice president may put a motion which is properly made on the refusal of the president to put it.

7. SAME—REGULARITY OF MEETINGS.

A voluntary association, which had adopted no constitution, by-laws, or rules of any kind, held each meeting pursuant to the adjournment at the preceding meeting, notice of which was published in the local newspapers, and business was transacted at such meetings by the members attending. At one of the meetings a controversy arose, in consequence of which the president, secretary, and others who were in the minority withdrew. Those who remained elected a president and secretary pro tem., proceeded with the business of the meeting, and adjourned to a specified day, in the usual manner. Several meetings were afterwards had, pursuant to similar adjournments. *Held*, that such meetings were the regular meetings of the association, and that so-called "special meetings" held during the same period by the members who had withdrawn from the meeting at which the trouble occurred were not meetings of the association, though they were presided over by the regular president.

8. SAME—REMOVAL OF OFFICERS—INDEFINITE TERM.

Where an officer of an association was elected, but there was no term of office fixed, and no rights, powers, or duties prescribed, she holds the office only during the pleasure of the association, or until another person is elected.

Action by Jennie M. Ostrom, as president, etc., against Jennie L. Greene, as executrix, etc., and others. Judgment for plaintiff.

T. F. Bush and George McLaughlin, for plaintiff.

Thornton A. Niven, John P. Roosa, Jr., and Lewis E. Carr, for defendants.

CHESTER, J. This case presents for determination an unfortunate controversy arising among ladies who joined hands in the first instance for the commendable and patriotic purpose of raising funds for the erection of a soldiers' monument. That the controversy has caused much bitterness and excitement is apparent. That it has been one of unusual character is unquestioned, and this should be a cause for gratification. That any resulting memorial will unfortunately perpetuate in the community memories of the controversy as well as of the heroes of Sullivan county is evident and to be regretted; but, regardless of these things, the questions presented, like all others, must be determined by the rules of law applicable thereto, if they can be ascertained. It appears that on the 14th of September, 1892, seven ladies interested in the project met

at the residence of Mrs. Niven, in Monticello, and decided to organize a society for the purpose of raising funds to erect a monument to the soldiers of Sullivan county, at that place. It was determined that the society should be known as the "Ladies' Sullivan County Soldiers' Monument Association," and that the membership fee should be one dollar. At this meeting, Mrs. Niven was elected president, and Mrs. Roosa secretary and treasurer. Six vice presidents were elected, as well as a corresponding secretary. No constitution or by-laws were adopted at this or any other meeting, nor were any parliamentary rules, tenure of office, or official rights or duties ever agreed upon, nor any time for stated meetings or rule for fixing or calling meetings ever adopted. Each of the meetings, as appears by the record kept by the secretary, was regularly adjourned from time to time until the 3d day of January, 1893; and it was the custom to cause notice of each adjournment and of the next meeting to be published in the village newspapers. During this period many meetings of the association were held, all of which were presided over by Mrs. Niven. Various methods of raising money for the purposes of the society were discussed at these meetings, and put into operation. Subscription papers were largely circulated, and numerously signed. These papers all bore the following headings:

"We, the undersigned, hereby agree to pay the sum set opposite our respective names for the purposes of creating a fund to be devoted to the erection of a soldiers' monument, in the village green, at Monticello, New York."

Funds were also raised for the association by concerts, school entertainments, and by various other methods. At the time of the meeting of January 3, 1893, the membership of the association had increased to 78, and it had raised, and had in the hands of its treasurer, the sum of $776.66. She also had in her possession the treasurer's book, the records and minutes of the society, and the several subscription lists referred to. That meeting was called to order by the president, Mrs. Niven, and 35 members were present, a considerably larger number than usual. Some business was transacted, after which Mrs. Ostrom, the present plaintiff, offered a resolution that the members of the association present proceed to organize an incorporated association, under and pursuant to the statutes of the state of New York, to accomplish the object of the association. The president thereupon read a written address against incorporation, and afterwards, upon calls for the question, refused to put the motion, on the grounds, as she stated, that it was out of order, as well as illegal. Mrs. Fairchild, one of the vice presidents, was then asked to put the motion, but she declined. Mrs. Bush, another vice president, was then requested to do so, and the motion to incorporate was put by her, and carried, 27 members voting for the motion, and 7 against it, Mrs. Bush not voting. A motion to adjourn was then put, and lost, whereupon the members who had voted against incorporation left the meeting. Included in this number were Mrs. Niven, the president, and Mrs. Roosa, the secretary and treasurer. Since that time, those who left and those who remained at the meeting, together with their respective adherents, have each maintained

a separate organization, and each claim to be the regular and original association.

Those who remained proceeded to appoint a president and secretary pro tem., and, after transacting some business, unanimously adjourned to January 17th. A meeting was held upon the last-named date, at which about 30 members were present. One of the vice presidents called the meeting to order, and a president and secretary pro tem. were chosen. A resolution was adopted that the office of secretary and treasurer be separated; that Mrs. Roosa continue to hold the office of treasurer; and that the association proceed forthwith to elect a permanent secretary in the place of Mrs. Roosa. Mrs. Thornton was thereupon elected permanent secretary. A resolution was also adopted that within five days Mrs. Roosa pass over to her successor, as secretary, all records and papers pertaining to the affairs of the association. This resolution was afterwards served upon or handed to Mrs. Roosa. After transacting other business, the meeting adjourned to January 31st, following. On the last-named date a meeting was held, which was attended by 31 members. Mrs. Ostrom was again chosen president pro tem., in the absence of the president. Resolutions were adopted by a unanimous vote, removing Mrs. Niven from the office of president, and Mrs. Roosa from the office of treasurer, without personal notice to either of them, and directing each of them to render an account to the association of all moneys received by them respectively, and directing Mrs. Roosa to pay over to the treasurer, who shall hereafter be elected, all moneys, books, and papers pertaining to her office; also providing that the duties of the office of president be performed by a vice president until a permanent president shall be elected; and also directing the secretary to cause a notice to the members of the association to be published in the two newspapers printed in Monticello, that at the next meeting of the association an election of president and treasurer to fill the vacancies caused by the removal of Mrs. Niven and Mrs. Roosa respectively would be held. A resolution was also adopted that "this association shall continue under the name of the 'Sullivan County Ladies' Soldiers' & Sailors' Monument Association.'" The meeting was adjourned to February 7th, and notice thereof was published as directed. A meeting was held pursuant to this adjournment and notice on the last-named date, at which 54 members were present. It was called to order by Mrs. Ostrom, vice president. An election for president in place of Mrs. Niven, and for treasurer in the place of Mrs. Roosa, was then held, resulting in 52 ballots being cast for Mrs. Ostrom for president, and 52 for Mrs. Decker for treasurer; and Mrs. Ostrom and Mrs. Decker were thereupon declared elected to the offices of president and treasurer respectively. A resolution was adopted directing the treasurer, Mrs. Decker, to make a personal demand of Mrs. Roosa for the immediate possession of all books, papers, and moneys pertaining to the offices of treasurer and secretary. This resolution was afterwards delivered to Mrs. Roosa by Mrs. Decker, but Mrs. Roosa did not comply with its direction, for the reason, as she stated, that she had resigned as treasurer, and had turned over everything to Mrs. Wright. A

resolution was also adopted "that the president of this association proceed to take such measures and proceedings in behalf of the association as may be necessary to recover all books, papers, and moneys belonging to this association, and withheld from it and its proper officers either by the former president, Mrs. Niven, or by the former secretary, Mrs. Roosa, and to secure the delivery of all such books, papers, and moneys to the proper officer of this association." The meeting then adjourned to February 21, 1893. Neither Mrs. Niven, nor Mrs. Roosa, nor any of the members who had withdrawn from the meeting of January 3d, attended any of the above-named meetings held after that date, but they held what were termed "special meetings" at Mrs. Niven's residence on January 6th, January 13th, and January 24th. The minutes of the last-named meeting, which were kept by Mrs. Wright, who acted as secretary, show that the meeting was called to order by Mrs. Niven, 19 members being present, and that three new members were reported. The minutes also show that Mrs. Roosa tendered her resignation of the office of recording secretary and treasurer, which was accepted, and that Mrs. Wright was elected in her place. No notice of this meeting was given to those who were in favor of incorporation. It appears by the proofs that Mrs. Wright first became a member by paying her dollar to Mrs. Niven, while Mrs. Roosa was treasurer, on January 20, 1893, and that within three or four days after Mrs. Roosa's resignation, as stated, the latter passed over to Mrs. Wright all books and papers in her hands belonging to the association, and also the sum of $776.66, the moneys of the association then in her hands as treasurer. This action was commenced February 18, 1893, against Mrs. Wright and Mrs. Roosa, to recover the moneys, books, and papers of the association. Since the taking of the testimony upon the trial, Mrs. Wright has died, and the action has been revived against her executrix, Mrs. Greene. Many other facts appearing in the testimony have been pressed upon my attention, but none of them, in my judgment, are material upon the questions involved in this case.

The action is brought by the plaintiff under section 1919, Code Civ. Proc., which provides that:

"An action may be maintained by the president or treasurer of an unincorporated association, consisting of seven or more persons, to recover any property, or upon any cause of action, for or upon which all the associates may maintain such an action by reason of their interest or ownership therein, either jointly or in common. * * * Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section."

That this is an association such as is described in the section referred to cannot fairly be denied, and counsel upon each side in this case agree that a settled rule of law with respect to associations of this character is that the intervention of the courts cannot be invoked to interfere with the action of voluntary associations, except where property interests or rights or valuable personal privileges are involved. The right to the possession of the funds, books, and papers of this association is, in my opinion, such a right and interest

in property as to justify the parties interested in seeking the inter-position and aid of the court in determining the controversy respecting their ownership. The principal questions to be determined are: Which of the two factions or parts of this society, that over which the plaintiff presides, or that composed of the members who have adhered to Mrs. Niven, constitute the voluntary unincorporated association organized September 14, 1892, and, if those who adhered to Mrs. Niven do not constitute such association, is the plaintiff the lawfully constituted president thereof, and entitled to maintain this action in its behalf?

The fact that this association had no rules, constitution, or by-laws for its government renders judicial decisions relating to societies that are so governed of little value in determining the questions presented. While it had no such rules for its guidance, yet the testimony reveals a usage or custom with reference to its meetings which cannot be ignored, and which is entitled to be considered in determining the questions involved. It was the custom, from the organization of the association down to the time when the disruption occurred, and down to the time when the plaintiff claims to have been elected president, to adjourn each meeting to a definite time and place, and to announce the time and place of the adjournment in the village newspapers. It was not the custom to send notices to the members. Such members as chose to do so attended these meetings pursuant to these adjournments and to the notices so given. These were the regular meetings of the association. It was at these meetings prior to January 3, 1893, at which Mrs. Niven presided, of which a record was kept by its secretary, that important business was transacted by those who attended. It cannot fairly be said, under the circumstances, that it required a majority of all the members to constitute a quorum or to transact business. The society was composed of an indefinite number of members. There was no rule providing the number that should constitute a quorum, and, in absence of such rule, the members who attended the regular meetings held in accordance with the established custom constituted a quorum, and were entitled to transact any business that fairly came within the purposes for which the association was formed. The fact that less than a majority of all the members appeared at any of these meetings was of no importance, because those who failed to attend impliedly gave their assent that those who did attend should, by a majority vote, transact the business of the association. These principles are supported by numerous authorities. Nibl. Vol. Soc. (1st Ed.) § 127; 2 Kent, Comm. side page 293, subd. 8; Dill. Mun. Corp. (4th Ed.) § 277; Mor. Priv. Corp. § 476.

It appears that Mrs. Niven attended the meeting on the 3d day of January, and, after calling it to order, read a paper congratulating the association upon its success, and suggesting that, as the money was all subscribed, they should close the roll of membership, collect the subscriptions, and appoint a committee to select a site. Then followed some other business, the trouble over her refusal to put the question with reference to the proposed incorporation, the putting of it by a vice president, its adoption by a large majority

of those present, the voting down of a motion to adjourn, and the withdrawal of Mrs. Niven and her adherents from the meeting. I cannot avoid the conclusion that, by this withdrawal of the president and several members, they did not carry the association with them. The majority attending the meeting was the governing power, not the person who for the time being held the office of president. She was but the agent of the body to do its lawful will, and while she may have been right in her contention that a portion only of the members present could not lawfully form themselves into an incorporation in the manner proposed, to the prejudice of the life of the association, yet it cannot be claimed that, because she was president, she had any greater power or voice in determining the action of the association than any other member. When she refused to put a motion to the meeting in respect to a matter concerning which she apparently differed from the majority, that refusal could not properly stand in the way of the association going on with its business, nor could her departure from the meeting upon the failure of a motion to adjourn justly operate as a veto upon the further or future deliberations and actions of the association. It is not an answer to this proposition to say that, upon the refusal of the president to put the motion, an appeal should have been taken from her decision to the body, for the reason that it was acting under no parliamentary regulations requiring that method of procedure. The objection, in this connection, that a vice president could not properly put a motion while the president was in the chair, has no force, in the face of the refusal of the latter to put it; and especially not in view of the testimony, which is very clear, that, on the refusal of the president to act, she gave her assent that the question be put by Mrs. Bush, a vice president, and offered her the chair for that purpose.

I do not regard the action at the meeting that day with reference to the proposed incorporation, or with reference to turning the property of the association over to the incorporation when formed, or what occurred there in these respects either before or after the withdrawal of these members, as material upon the questions involved here. It is sufficient to say that the action taken that day and the certificate of incorporation there prepared were ineffectual to create a corporation, and therefore the resolution with reference to the property had no force. The important fact to be considered in this connection is that at the close of all the other transactions there, as clearly appears by the testimony, the voluntary association adjourned to meet on the 17th day of January. Following that, adjournments were also had to January 31st, February 7th, and February 21st, and then to meet on the call of the president and secretary. All these adjournments were in the usual manner, and notices thereof were given by the method which was customary; the only difference, if any, with respect to the meetings held after January 3d, as compared with those held before, being that after that date greater publicity was given, occasioned, no doubt, by the excitement incident to the controversy which then arose. I think these adjournments were regularly and lawfully had, in pursuance of the established usage, and that the meetings held pursuant to these adjournments were the

lawful and regular meetings of the parent society. If my reasoning is correct, the conclusion necessarily follows that the so-called "special meetings" held by Mrs. Niven and her adherents, subsequent to January 3d, were not meetings of the association, even though Mrs. Niven, who was elected president at the foundation of the society, presided over them. Neither did the assumed election of Mrs. Wright at one of these meetings constitute her, in law or in fact, the treasurer of the association, and it gave her no right to have or hold its moneys, books, and papers.

The next question to be considered is as to whether or not Mrs. Niven was lawfully removed from the office of president, and the plaintiff elected thereto, so as to give the latter the right to maintain this action. It will be noticed that, when Mrs. Niven was elected president, she was not elected for a definite term of office. There was nothing in the rules or regulations of the society which fixed the tenure of her office. She was chosen at the first meeting, when only 7 members were present. Subsequent to that time, and prior to the disruption, the membership had increased to 78. There being nothing to fix her rights, powers, duties, or privileges or the term of her office, the election as president gave her no rights superior to that of any other member, except the right to preside over the meetings of the society during its pleasure, or until it should choose another in her place. Nibl. Mut. Ben. Soc. § 35; Ang. & A. Corp. §§ 426, 429; Brendon v. Worley, 8 Misc. Rep. 253, 28 N. Y. Supp. 557. It is claimed here, however, that the act of the association in removing Mrs. Niven from the office of president was not done by a majority of all the members, only 31 being present at the meeting at which the resolution of removal was unanimously adopted, and therefore that she was not lawfully removed. But, as we have seen, it was not essential for a majority of all the members to act. If the removal was lawful, it could be done by a majority of those who attended a regular meeting. It is also claimed that the removal was not lawful, because it was without charges, and without notice and opportunity to be heard; and numerous cases are cited holding that a person cannot be expelled from membership in a voluntary unincorporated society without notice and an opportunity to be heard. I do not think these cases are applicable. No case has been called to my attention, nor do I know of any, which holds that a person chosen to office in an association like this, for no defined term, is entitled to notice and an opportunity to be heard with reference to a removal from office or to the election of a successor.

Following the removal at the time and in the way stated, Mrs. Ostrom, the plaintiff, was elected president of the association, at a regular meeting thereof held on the 7th of February, at which 54 members were present, 52 of whom cast their ballots for her. This would have been effectual, in my judgment, to have caused a removal of Mrs. Niven from the office of president, even if the association had not at the prior meeting passed a resolution of removal. Ang. & A. Corp. §§ 426, 429; Nibl. Mut. Ben. Soc. § 35. At this meeting it will be seen that a large majority of all the members of the association voted in favor of the plaintiff for president.

This act cannot be controlled by the court, for the decision of an unincorporated society, such as this was, possessing no corporate powers or functions, upon the question of an election to office, was a matter peculiarly and exclusively to be determined by the society, and the decision of the society upon the question is final, and must be respected by the court. Nibl. Mut. Ben. Soc. p. 143, § 120.

What has been said with reference to the removal of the president and the election of her successor applies with equal force to the removal of the treasurer and the election of her successor, as substantially the same methods were pursued in both cases.

The defendants' counsel also urge that the plaintiff is not entitled to succeed because the self-imposed trust of the association has been discharged by the application of the moneys in question to the use for which they were raised. The secretary's minutes show that the association was organized for the purpose of raising funds to erect a monument to the soldiers of Sullivan county, at Monticello, and the subscription papers used state that the fund was "to be devoted to the erection of a soldiers' monument in the village green, at Monticello." Upon the trial evidence was received, notwithstanding the plaintiff's objection thereto, that Mrs. Wright, since the commencement of the action, had paid the moneys received by her from the defendant Roosa to the contractor who furnished the monument on the green. If this was an action in equity, it would have been proper for the court to have received evidence of facts arising subsequent to the commencement of the action, and to bring its relief down to the date of the judgment. Kilbourne v. Supervisors, 137 N. Y. 178, 33 N. E. 159. But while the plaintiff, in her complaint, asks for an accounting, as well as for a judgment for the moneys and property of the association, yet, the amount of the fund having been ascertained without the aid of the equity powers of the court, the action proceeded and the trial was had as an action at law upon an allegation of wrongful conversion, and with no equitable defense interposed. That being so, the evidence as to the disposition of the funds subsequent to the commencement of the action was not admissible. The defendants cannot avail themselves of a defense not pleaded, though the facts upon which it is based appear in the record. Douglass v. Ferris, 138 N. Y. 192, 204, 33 N. E. 1041; Hall v. Reflector Co., 30 Hun, 375.

But, if the defense now urged had been pleaded, I am unable to see that it would serve to defeat the action. Conceding, for the sake of the argument, that Mrs. Wright, without the direction of the association, applied these funds to the erection of a monument in the village green, was such application by her a satisfaction of the trust reposed in the association with reference to them? I think not. These moneys were not contributed to any individual member or members, but to the association. It was for the association to execute the trust, not for one member nor a faction of members. The association itself, acting through a majority of its members participating in its regularly constituted meetings, was the only agency or authority to fix upon a location and a design, to determine the materials for the monument, and to agree upon suitable inscriptions to

be inscribed thereon commemorative of the deeds of those whose memories were sought to be perpetuated. The association had a right, and it was its duty, to have a voice in all these important matters, so that the final result should represent the deliberations and the determination of the entire body. If Mrs. Wright chose to apply the funds in her hands to the erection of a soldiers' monument without the direction of the association,—no matter how excellent that monument may be, nor how suitable, according to her ideas, as a soldiers' memorial,—yet her estate cannot, for these reasons, escape liability. This was not an enterprise where she and the other members were co-partners in this respect, and where her acts bound her associates. Lafond v. Deems, 81 N. Y. 507. Until, therefore, these moneys have been expended by the association, and have found lodgment in a memorial the location, materials, design, and inscriptions of which have been determined by the association charged with these duties, the trust imposed upon it and upon these funds will remain unadministered.

It appears that the defendant Roosa did not have in her possession, at the time the suit was commenced, any of the money or property sued for, and at that time Mrs. Wright had the custody of all such money and property. This is an action where a separate judgment may be rendered against either of the defendants. For these reasons, the plaintiff's counsel consents in his brief to a dismissal of the complaint as against the defendant Roosa, without costs; and the judgment may so provide. The plaintiff, as president, etc., may have judgment against the defendant Greene, as executrix of Mrs. Wright, for the sum of $776.66, with interest thereon from January 24, 1893, with costs, and also for the possession of the books, records, papers, and subscription lists of the association delivered to Mrs. Wright by the defendant Roosa on that date. Ordered accordingly.