Argued September 7; affirmed October 11, 1937

# WEIGHERS, WAREHOUSEMEN AND CEREAL WORKERS' UNION, LOCAL 38-123 OF THE INTERNATIONAL LONGSHOREMEN'S ASS'N ET AL. *v.* GREEN ET AL.

(72 P. (2d) 55)

*William P. Lord* and *Ben Anderson*, both of Portland (Gross & Anderson, of Portland, on the brief), for appellants.

*W. S. U'Ren* and *C. W. Robison*, both of Portland, for respondents.

396

ROSSMAN, J. The complaint (second amended), the sufficiency of which as the statement of a cause of suit is the sole matter for consideration, alleges all of the following: The Weighers, Warehousemen and Cereal Workers' Union, Local 38-123, composed of a thousand persons, is a trade union, possessing a charter granted by the International Longshoremen's Association, which latter organization is affiliated with the American Federation of Labor. The union is unincorporated "and this suit is brought for and on behalf of the members thereof". Eleven members of the union who are named in the complaint "were and now are the duly elected delegates to the Central Labor Council of Portland" to which the complaint refers as the council. The latter was chartered by the federation. The defendant Green is the president of the federation, and defendants Brady, Hunter and Anderson are, respectively,

president, vice-president, and secretary of the council. In order to support the union, the council, the longshoremen's association and the federation, each member of the union pays monthly dues, five cents of which is remitted by the union to the council. Article XI, § 2, of the federation's constitution provides:

"It shall be the duty of all national and internatioal unions affiliated with the American Federation of Labor, to instruct their local unions to join chartered central labor bodies   *   *   *   where such exists."

Pursuant to this provision, the " 'union' became shortly after it was chartered and remained until May 24, 1937, affiliated with the 'council' ." The existence of the council "is vital and important to the welfare, economic security and well being of the membership of said 'union'." May 7, 1937, the union called a strike against a concern which is named in the complaint. About this time the defendant Anderson "sent communications to and received a response from his principal, defendant William Green, as president of the American Federation of Labor, directing the 'council' to unseat the 'union'." Upon information and belief the plaintiff alleges that these communications were made for the purpose of improperly and maliciously using the prestige of Green, Brady and Anderson to destroy the effectiveness of the strike. Next, the defendant Brady "unlawfully and in direct violation of the constitution of the 'council' and the American Federation of Labor at the regular 'council' meeting held Monday night, May 24, 1937, ordered. that the delegates of the 'union' to the said 'council' be unseated in accordance with what defendant Brady alleged to be the 'mandate' of defendant William Green". An appeal was taken to the membership of the council from this ruling, whereupon Brady retired as presiding

officer and the defendant Hunter assumed that position. "Upon a vote being taken and the said defendant Anderson counting the vote, the defendant Anderson declared that the delegates of the 'union' to the 'council' were unseated; and that in pursuance thereto, defendant Gust Anderson, on May 25, 1937, under seal of the said 'council' and as secretary thereof, sent a communication to the plaintiff Bert Shelton and to the plaintiff 'union' notifying them that the 'union' was unseated from the 'council'. A copy of said letter is attached hereto as Exhibit A, and by this reference is incorporated and made a part thereof." A copy of the letter, omitting formal matters, follows:

"This is to officially notify your organization that the Central Labor Council of Portland and Vicinity at its last regular meeting held May 24, acted upon a telegram from President Green of the American Federation of Labor instructing the council to unseat your organization for failure to comply with the jurisdictional award handed down by the Executive Council of the American Federation of Labor in which they have awarded jurisdiction of warehousemen inland, away from marine docks and waterfront, to the International Brotherhood of Teamsters.

"Acting upon this intruction, the delegates by roll call vote sustained the Chair in its decision that your organization should be unseated in accordance with the instructions of the American Federation of Labor, by a vote of 140 for to 113 against.

"The unseating of your organization is effective at once."

Article XI, § 8, of the constitution of the federation provides:

"No central body or department affiliated with the American Federation of Labor, shall reject credentials presented by a duly elected or appointed delegation of a local union chartered by a national or international

union having affiliation with the American Federation of Labor; provided, however, that upon written charges, signed by at least three delegates, any delegate of an affiliated union may, upon conviction after a fair trial, be expelled or suspended. Action of the central labor body under this section shall be subject to appeal to the executive council of the American Federation of Labor, and no delegation representing local unions affiliated, as herein described, shall be suspended or expelled until like action is taken."

Article II, § 8, of the constitution and by-laws of the council contains a like provision concerning the rejection of credentials, but contains no provision concerning appeals. No written charges had been filed before the council took the aforementioned action. "The acts of the defendants Brady, Hunter and Anderson herein alleged are in excess of and beyond their authority as officers and servants of the 'council' under the constitution of the 'council' and the alleged 'mandate' from defendant Green finds no justification or authority under the constitution of the American Federation of Labor, but that, on the contrary, as set forth in paragraph 8 hereof, the constitution specifically directs a procedure of written charges and fair trial before a central council may suspend or expel a delegation." The complaint alleges irreparable loss and prays that the defendants be restrained from denying to the plaintiffs' union and its delegates participation in the affairs of the council.

The demurrer was based upon a contention that the complaint did not state a cause of suit. After it had been sustained the plaintiffs declined to plead further.

The above indicates that there were two labor unions in Portland which accepted the membership of men

employed in warehouses located away from the waterfront—the plaintiffs' union, chartered by the International Longshoremen's Association, and another, chartered by the International Brotherhood of Teamsters. Apparently some sort of a difficulty arose out of this circumstance and came to the attention of the executive council of the federation. That body, according to Anderson's letter, the verity of which is not attacked by the plaintiffs, attempted to settle the dispute by making what Anderson terms a "jurisdictional award" which granted "jurisdiction of warehousemen inland, away from the marine docks and waterfront, to the International Brotherhood of Teamsters." After this award had been made the defendant Green, as president of the American Federation of Labor, directed the Portland Central Labor Council "to unseat the union". Then the council, by a vote of 140 to 113, did as Green directed and "unseated" the union. We say the union was unseated, as distinguished from the delegates, because Anderson's letter so states three times, and because all of the averments of the complaint indicate that, not the delegates, but their union was the subject of attack. When Anderson, after the vote had been taken, "declared that the delegates of the 'union' to the 'council' were unseated" and in his letter to the union reported "that the 'union' was unseated from the 'council,' " we understand he was thereby interpreting the vote as a severance of the relationship previously existing between the council and the union. The termination of that relationship, of course, terminated the right of the union to send delegates to the council. In whatever way the result of the vote was expressed, it is evident that no one thought that the majority had found the delegates guilty of any misconduct, but that all deemed the vote an end of the affiliation previously existing

between the two bodies. This interpretation of the nature of the action taken on May 24, 1937, is borne out, we believe, by the quotations which we have made from the complaint and by numerous passages in the appellants' brief. Before we quote from the latter, we make the observation that if the vote taken on May 24, 1937, was against the delegates only, and did not end the affiliation between the two bodies, it was unnecessary to have made the entire membership of the union parties plaintiff—the eleven delegates would have sufficed. Moreover, if the delegates alone were affected by the vote, their alternates could have attended the council's meetings as plaintiffs' representatives, or the union could have elected new delegates; either course would have ended the difficulty. We now quote from the appellants' brief:

"At no time were written charges preferred against the plaintiff union before the council in the manner required, nor in any other manner. There was no notice of charges, notice of hearing, trial or  *  *  *  Only the direction of Mr. Green that the plaintiff union be unseated and the literal compliance with that direction by the defendant officers of the council.  *  *  *  The relationship between the plaintiff union and the council is a contractual one. The constitution of the American Federation of Labor, which provides for the creation and chartering of central labor bodies, establishes the basis of the relationship between the local union (such as the plaintiff union herein), the council and the American Federation of Labor.  *  *  *  All the relief requested of the court is that the defendants be required to accord the plaintiff union the right to continue to exercise rights and privileges, of which in the eyes of the law, it had never been legally divested.  *  *  *  In the instant case, the plaintiff union set out in its complaint, the various elements of injury which the unlawful expulsion from the council had caused it or threatened to cause it."

In other portions of the brief the plaintiffs refer to the delegates, but we believe that the above quotations indicate that the plaintiffs, too, interpreted the action of the council as a termination of its relationship with the union.

■ In seeking to sustain their complaint, the plaintiffs rely upon the familiar principle of law which deems membership in a voluntary organization as contractual. This principle regards the constitution and by-laws of the organization as the embodiment of the terms of the contract between the member and itself. Since the right of the member to remain a member is governed by this contract, this principle protects the member against a termination of his membership by the organization, unless it pursues the course of procedure specified in its constitution and by-laws after he has been guilty of conduct warranting action. Even such a course of procedure does not terminate the membership if it conferred rights having a pecuniary value, and if the procedure pursued failed to afford the member reasonable protection against arbitrary action; as, for instance, if it failed to provide for notice, a fair trial, etc.

■ These principles govern not only the relationship between the member and his union but also the relationship between his union and the Central Labor Council or any other organization with which it is affiliated. The complaint quotes the provisions of the constitutions of the federation and of the council governing the trial of a delegate against whom charges have been filed, but gives no indication of the course of procedure through which the union became affiliated with the council, nor of the possible causes for which the relationship could be ended through action by the council. The complaint does not charge that the council was not justified in

severing its relationship with the plaintiffs' union after the latter had failed to comply with the jurisdictional award of the federation's executive council. It neither alleges that the executive council lacked authority to make the award nor that it failed to pursue the course of procedure required by law in so doing. Likewise, although Anderson's letter discloses that 253 individuals cast their ballots at the meeting of May 24, 1937, the complaint does not impugn the motives of any of them, with the exception of the defendants Brady, Anderson and Hunter. And, although it describes the meeting held on that day as a regular one, it does not claim that anyone cast a vote who was not entitled to do so.

The provisions of the constitution of the federation and of the council which we have previously quoted indicate that before a delegate can be deemed disqualified to perform the duties of his office he must be the subject of charges signed by three individuals sustained by proof submitted in the course of a fair trial. These provisions would undoubtedly be applicable if some member of organized labor desired to accuse a delegate of disloyalty to his organization, or desired to accuse him of any other conduct which disqualified him from performing the duties of a delegate. But these provisions do not outline the procedure to be followed in the event that the council desires to terminate its relationship with an affiliated union, for surely if it desires to end such a relationship because it is no longer desirable, it is not necessary to file charges against delegates who may be innocent of all wrongs, and who are, therefore, not subject to any provable charge. By way of illustration, let us assume that in the past the council had permitted the Association of Church Women, if there is such an organ-

ization, to become affiliated with it and to send delegates to the council. Let us further assume that the council desires to terminate the affiliation. Surely it would not be necessary, in order to terminate the affiliation, to file charges against the women, resort to a trial and then enter up a judgment of conviction against women who, possibly, had done no wrong. Quite to the contrary, that would be done which is always done when two organizations come to a parting of the ways—a vote is taken and the relationship is ended, unless the constitution and by-laws of the organization require otherwise.

We have said enough to indicate our view that the constitutional provisions of the two organizations quoted in the complaint have no reference to a severance of the relationship between the Central Labor Council of Portland and the plaintiffs' union. The complaint mentions no other constitutional provision or by-law. We have also said enough to indicate our belief that the vote of May 24, 1937, was intended to sever the relationship. It may be that some provision of the constitution and laws of the federation or of the council render that method of ending the affiliation unlawful; if so, it ought to have been alleged. We cannot assume that those who cast their ballots were pursuing an irregular or unlawful course. It was incumbent upon the plaintiffs when they sought the extraordinary relief demanded by the complaint not only to allege rights belonging to themselves but also to show that the defendants had pursued an unlawful course which constituted an invasion of those rights. A complaint which seeks the issuance of an injunction must negative all reasonable inferences capable of arising from the facts stated, and which have a tendency to indicate

that the plaintiff is not entitled to the relief which he seeks: 32 C. J., Injunctions, p. 322, § 532. It necessarily follows that if the Central Labor Council was justified in terminating the plaintiffs' affiliation with that organization in the manner in which it was done on May 24, 1937, the defendants committed no wrong, and the complaint alleges no right which was violated. Since it is altogether reasonable to infer from the averments of the complaint, in the absence of any claim to the contrary, that the majority of the delegates who voted to terminate the relationship exercised a lawful right, the relationship was ended in a legal manner.

Since the complaint does not allege that the executive council of the American Federation of Labor was not authorized to make the jurisdictional award mentioned in Anderson's letter, and does not allege that the Central Labor Council of Portland was not authorized to terminate its relationship with the plaintiff in the manner in which that was done, after the union had failed to comply with the award, we are satisfied that the circuit court did not err when it dismissed the plaintiffs' suit. Its decree must, therefore, be affirmed. Costs and disbursements will not be allowed.

BEAN, C. J., and LUSK, RAND, KELLY and BELT, JJ., concur.

BAILEY, J., concurs in the result.