Argued January 11; affirmed January 24, 1939

HARRIS ET AL., EX REL. CARPENTERS UNION No.
2573, OF MARSHFIELD, OREGON LUMBER
& SAWMILL WORKERS ET AL. *v.*
BACKMAN ET AL.

(86 P. (2d) 456)

*Gus J. Solomon,* of Portland (Dal M. King, of Myrtle Point, and Goodman, Levenson & Solomon, of Portland, on the brief), for appellants.

*J. W. McInturff* and *Wm. E. Walsh,* both of Marshfield, for respondents.

RAND, C. J. This is a suit to determine the ownership and right to the custody and possession of certain moneys, office furniture, files and records alleged to be the property of the plaintiffs. The complaint also prays for an accounting and injunctive relief. Plaintiffs are members of a local labor union designated as Carpenters Union No. 2573 of Marshfield, Oregon, Lumber and Sawmill Workers, a subordinate body of the United Brotherhood of Carpenters and Joiners of America, affiliated with the American Federation of Labor, and bring this suit in behalf of themselves and all other members of said union.

The defendants, other than the First National Bank of Portland, are sued as officers and representatives of the members of another similar but rival association known as Lumber and Sawmill Workers Union No. 116, International Woodworkers of America, an affiliate of the C. I. O.

The evidence shows that in April, 1935, some two hundred workers, engaged in lumber and sawmill work at and in the vicinity of Marshfield, signed and forwarded to the United Brotherhood of Carpenters and Joiners of America a petition requesting that body to grant a charter to establish a union of lumber and sawmill workers to be located in the city of Marshfield, State of Oregon, and to be organized on the 7th day of May, 1935, and each and every one thereof pledged themselves individually and collectively to be governed by the constitution, rules and usages of the United Brotherhood of Carpenters and Joiners of America.

In compliance with said request, a charter was issued by the Brotherhood on April 30, 1935, and, pursuant to the authority thereby conferred, officers were elected and installed and Union No. 2573 was formed and organized under and in accordance with the con-

stitution and by-laws of the United Brotherhood of Carpenters and Joiners of America. Thereafter and before the controversy among the members, hereinafter referred to, had arisen, other persons had joined the union and its membership had increased to approximately two thousand and each and all said members, including said petitioners, upon joining the union, obligated himself, as required by the ritual, "to abide by the constitution and laws" of the United Brotherhood. The charter, among other things, expressly provided:

"* * * it is hereby agreed in the acceptance of this charter that the aforesaid Union shall conform to the constitution, rules and regulations and in default thereof this charter may be revoked and the Union be suspended from all rights and benefits according to the laws of the United Brotherhood, and further it is agreed that should the aforesaid Union withdraw or be dissolved, suspended or forfeit this charter, then all property, moneys, books and papers shall become the property of the United Brotherhood."

Some time prior to August 8, 1937, some of the members became dissatisfied and desired to secede from said union and form themselves into a union affiliated with the International Woodworkers of America, an affiliate of the C. I. O., and, to that end, a special meeting was called and held in the Labor Temple on August 8, 1937, after but two days' notice of such meeting and with an attendance of only about three hundred of its total membership of two thousand, and a resolution to that effect was passed by a small majority of those present. The record of that meeting, as kept by the defendants, is as follows:

"M/S (Moved and Seconded) To sever all connections with the Carpenters and Joiners forever. A vote was taken, the chair being in doubt, a rising vote was

called for. Votes counted as 158 for the motion, 145 against.

M/S To recount the vote using a secret ballot. Carried.

M/S To appoint four tellers to count the ballots. Carried.- - -

M/S Ballot count announced as for the motion 159, against 132. Motion declared carried.

M/S To instruct the trustees to return the Charter and seal to the Carpenters and Joiners. Carried.

M/S To adjourn forever. Carried.''

During these proceedings, it appears that those who voted against severing connection with the United Brotherhood of Carpenters and Joiners left the room and, immediately after they had left, another meeting was then called and held, the minutes of which are as follows:

''Minutes of the special meeting held at the Eagles Hall Sunday, August 8th, 1937, for the purpose of organizing the Lumber and Sawmill Workers Union No. 2573 under the jurisdiction of the International Woodworkers of America.

The meeting was called to order by Bro. Backman.

M/S To retain the present officers until a new charter can be installed and an election date set by the new local. Carried.

M/S To instruct the Sec. to apply for a charter to the IWA as Lumber and Sawmill Workers Local Union No. 2573. Carried.

''M/S To instruct the Sec. to accept dues under the new charter and honor the cards of the old. Holding the local intact. Carried.

M/S To empower the Chairman to appoint a new organization committee consisting of one or more members in each plant. Carried.

M/S To adjourn. Carried.''

At the time this action was taken by the seceding members of Local Union No. 2573, all its officers, with

the exception of one of the plaintiffs herein, joined in said movement and participated in the attempt to abandon their allegiance to the United Brotherhood and to form a new union under the authority of the International Woodworkers of America. As such officers they had been intrusted with and were in possession of the moneys, records, files and other property belonging to Local Union No. 2573, and, while so in possession, they and the other seceding members appointed a committee of nine of their number, all of whom are defendants herein, to retain the possession thereof and directed said committee to deposit $5,000 of said moneys to their joint credit in the Marshfield Branch of the First National Bank of Portland. The moneys thus deposited have not been withdrawn from said bank and are still on deposit therein. Other moneys not so deposited have been applied in payment of the expenses incurred by the new union and none of the other property belonging to Union No. 2573 has ever been returned to Local Union No. 2573, or any of its officers or members thereof.

During all of said time, a large number of the members of Local Union No. 2573, far in excess of ten members, have remained loyal to their allegiance with the United Brotherhood and at no time has Union No. 2573 been dissolved, suspended or ceased to exist, nor has it at any time failed to exercise the functions of a local union in accordance with the constitution and laws of the Brotherhood. The constitution of the United Brotherhood provides that:

"The General Funds or property of a Local Union shall be used only for such purposes as are specified in the Constitution and Laws of the United Brotherhood and as may be required to transact and properly conduct its business".

"The funds or property of a Local Union cannot be divided in any manner among the members individually, but shall remain the property of the Local Union for its legitimate purpose while ten members remain therein."

■ Under the facts above stated, Local Union No. 2573, it not having been incorporated, was a voluntary association having no legal entity separate and apart from its own members. Like all other unincorporated voluntary associations, by becoming a member, unless the articles or laws of the association provide otherwise, a person acquires not a severable right to any of its property or funds, but merely a right to the joint use and enjoyment thereof so long as he continues to be a member.

"* * * So long as he remains a member of the association, however, he has an absolute right, which the courts will protect, to have its property and funds controlled and administered according to its organic plan, and to participate in its affairs in harmony therewith."
    7 C. J. S., p. 69, sec. 27a.

And, upon the dissolution of a voluntary association, "one who ceased to be a member prior to the dissolution is not entitled to share in the distribution, since the interest of a member in the property of the association ceases on the termination of his membership". 5 C. J., p. 1339, sec. 22.

"When a person ceases to be a member of a voluntary association, his interest in its funds and property likewise ceases, and the remaining members become jointly entitled thereto, whether his membership is terminated by his own act or omission or by the act of the society. This rule applies even where a number of members secede in a body, and although they constitute a majority, and organize a new association. In such

case the remaining members, and only they, are entitled to the entire funds and property of the association, so long as they continue to keep it alive and adhere to its purposes.''

Id., p. 1360, sec. 87.

Upon this point see *Alchenburger v. Freundschaft Lodge No. 72 D. O. H.*, 138 Ill. App. 204 (aff. 235 Ill. 438, 85 N. E. 653) ; *McFadden v. Murphy*, 149 Mass 341, 21 N. E. 868; *Altmann v. Benz*, 27 N. J. Eq. 331.

■ Hence, the withdrawal of a part of the members of Local Union No. 2573 would not effect the dissolution of the union, since ''even a withdrawal of a majority of the members in a body does not have this effect if enough members remain loyal to the association to carry out its purposes.'' 7 C. J. S., sec. 9, subd. (4) ; *McFadden v. Murphy*, 149 Mass. 341, 21 N. E. 868; 5 C. J., p. 1338, note 96.

''In the absence of provisions in the constitution or by-laws giving members an individual interest in the assets of a voluntary association, members who withdraw thereby lose their rights to associate property, title to which stays in the members remaining in the association, and the rule applies whether membership is terminated by the member's own act or omission (Coombs v. Harford, 59 A. 529, 99 Me. 426, 5 C.J. p. 1360 note 67) or by the act of the society. (Missouri Bottlers' Assoc. v. Fennerty, 81 Mo. App. 525, 5 C.J., p. 1360 note 68). This rule applies even where a number of members secede in a body, (Ostrom v. Greene, 55 N.E. 919, 161 N.Y. 353, affirming 52 N.Y.S. 1147, 30 App. Div. 621, affirming 45 N.Y.S. 852, 20 Misc. 177, 5 C.J. p. 1360, note 69), and although they constitute a majority, and organize a new association. In such case the remaining members, and only they, are entitled to the entire funds and property of the association, so long as they continue to keep it alive and adhere to its purposes.''

7 C.J.S., p. 69, sec. 27b.

■ Under the facts stated, it is settled law that Union No. 2573, in accepting its charter from the United Brotherhood, became subject to all the conditions upon which it was granted as contained in the charter, constitution and general laws of the Brotherhood and that these conditions, when assented to by the members thereof, constituted an enforceable contract between the Brotherhood and the Union and all its members, which contract the courts will enforce both as between the members themselves and as between the association on one side and the individual members on the other. 7 C.J.S., p. 34, sec. 11b; *Weighers, Warehousemen Etc. Union v. Green,* 157 Or. 394, 72 P. (2d) 58.

■ The charter, constitution and general laws of the Brotherhood, together with the local constitution and laws, constitute a contract which all members of the union who have assented thereto are bound to obey so long as they remain members of the union and, upon ceasing to be members of the union, they forfeit all right to the property and funds of the union and have no more right to control the disposition of such property and funds than if they had never been members thereof. From this it follows, that the attempted transfer of the property and funds of Local Union No. 2573 by the members who seceded therefrom was wholly unauthorized, null and void and did not, to the slightest extent, destroy the right of the remaining members to have the custody and possession of the same. This conforms to the recent decisions of the Supreme Court of the state of Washington in the analogous cases of *Lumber & Sawmill Workers Union No. 2623, et al., v. International Woodworkers of America, Local 49, et al., Local No. 2508 Lumber and Sawmill Workers, et al., v. John Cairns, et al.,* and *Local No. 2618 of the Plywood and Veneer Workers of the United Brotherhood of*

*Carpenters and Joiners of America, et al., v. Ray Taylor, et al.,* all decided December 29, 1938, and also conforms to what we believe to be the law applicable to the facts in the foregoing case.

■ This case has been ably presented by counsel on both sides, and it has been insisted by defendants' attorney that many of the members who joined Local Union No. 2573 did not possess the qualifications entitling them to admission into the union. Whether that is so or not is wholly immaterial. The seceders, and each and all of them, upon their admission into the union, promised and agreed to abide by the constitution and laws of the United Brotherhood. Whether qualified for membership or not, the contract they entered into was enforceable as against them and they are bound by all the conditions imposed. Having represented themselves, on applying for admission, to be qualified for membership, they are and of right should be estopped to deny such qualifications when sued for a failure upon their part to perform their contract.

■ The decree of the circuit court, therefore, is affirmed. But no costs upon this appeal are to be taxed as against the First National Bank of Portland, it being merely an innocent holder of the moneys deposited with it and not having participated in any of the wrongs complained of.

BELT, J., did not participate in this opinion.