LOCAL No. 2508 LUMBER AND SAWMILL WORKERS *et al.,*
*Respondents and Cross-appellants,* v. JOHN CAIRNS
*et al., Appellants.*[1]

*Joseph T. Pemberton,* for appellants.

*Lester C. Voris* and *Shorett, Shorett & Taylor,* for respondents and cross-appellants.

MILLARD, J.—In 1934, certain lumber mill workers in Whatcom county organized an unincorporated association, which obtained a charter, designated "Federal Charter" direct from the American Federation of Labor.  In the early part of 1935, the American Federation of Labor transferred jurisdiction of saw mill workers from itself to the United Brotherhood of Carpenters and Joiners of America (this organization

[1]Reported in 85 P. (2d) 1109.

was chartered by the American Federation of Labor), an international organization, which for brevity we will hereinafter designate "Brotherhood." The local union at Bellingham was informed of the transfer of jurisdiction and was advised that it would be granted a charter by the Brotherhood.

The members of the local union applied to the Brotherhood for a charter and expressed their desire to be classified as non-beneficial members. Beneficial members, who are required to pay seventy-five cents monthly dues to the Brotherhood, are entitled to admission to the home for the aged and to other fraternal benefits. The non-beneficial members are required to pay twenty-five cents monthly dues to the Brotherhood and are not entitled to those benefits. The act of the president of the Brotherhood in granting the dispensation to the mill workers to be chartered as a local union composed of non-beneficial members was approved at the general convention of the Brotherhood, December 7 to 16, 1936.

Pursuant to the application of the local union, a charter, reading as follows, was issued by the Brotherhood April 3, 1935:

"KNOW YE: All men by these presents, that acting under the authority vested in us by the laws of the above named organization, we, the undersigned, do hereby grant this Charter to a body of qualified carpenters, who are to be hereafter known and designated as Carpenters Union No. 2508 of Bellingham, Washington, Lumber and Sawmill Workers, to be held by them or their successors; and the aforesaid Union being properly installed is hereby authorized and empowered to transact business and initiate into its membership any person or persons, lawfully proposed and elected, in accordance with the Constitution, Rules and Regulations of the United Brotherhood of Carpenters and Joiners of America.

"It is hereby agreed in the acceptance of this Charter that the aforesaid Union shall conform to the constitution, rules and regulations and in default thereof, this Charter may be revoked, and the Union be suspended from all rights and benefits, according to the laws of the United Brotherhood. And further it is agreed that should the aforesaid Union withdraw or be dissolved, suspended or forfeit this charter, then all property, monies, books and papers shall become the property of the United Brotherhood.

"In Consideration of the due and faithful performance of the foregoing stipulations, the United Brotherhood does hereby bind itself to sustain Carpenters Union No. 2508 of Bellingham, Washington, in the exercise of all rights, privileges, and benefits as a Local Union under its jurisdiction.

"In Witness Whereof, we have subscribed our names and affixed the seal of the United Brotherhood this 3rd day of April, 1935.

> WILLIAM HUTCHINSON,
> General President,
> FRANK DUFFY,
> General Secretary."

The local union, to which we will hereinafter refer as Local 2508, was given the Brotherhood number 2508. It elected its own officers, fixed dues in excess of twenty-five cents monthly per capita tax payable to the Brotherhood, held regular meetings, and functioned from the time of the issuance of its charter as a local union under the constitution of the Brotherhood. The classification of non-beneficial membership chosen and accepted at the time Local 2508 was chartered was never changed or altered in any way.

Upon joining the local union, each member took an obligation to abide by the constitution and laws of the Brotherhood, and the member was presented with a copy of the constitution of the Brotherhood. In addition to the oath of allegiance required of the members, all officers of the union, upon qualifying

as such, took an obligation to uphold the constitution of the Brotherhood. Pertinent provisions of that constitution read as follows:

"Section 6. The jurisdiction of the United Brotherhood of Carpenters and Joiners of America shall include all branches of the Carpenter and Joiner trade. In it shall be vested the power through the International Body to establish and charter Subordinate Local and Auxiliary Unions, District, State and Provincial Councils in all branches of the trade, and all other skilled employes working at the industry, and its mandates must be observed and obeyed at all times. . . .

"Section 7. The trade autonomy of the United Brotherhood of Carpenters and Joiners of America consists of the milling. . . .

"Our claim of jurisdiction, therefore, extends over the following divisions and sub-divisions of the trade: Carpenters and Joiners. . . .

"And all those engaged in the running of woodworking machinery.

"When the term 'carpenter and joiner' is used, it shall mean all the sub-divisions of the trade as herein specified. . . .

"Section 10. The General President shall issue and sign all charters, may grant dispensations in extraordinary cases. . . .

"C. Section 25. A Local Union cannot withdraw from the United Brotherhood or dissolve so long as ten members in good standing object thereto. . . .

"A. Section 42. There shall be four classes of membership, viz: Beneficial, semi-beneficial, honorary and auxiliary. . . .

"A. Section 58. The General Funds or property of a Local Union shall be used only for such purposes as are specified in the Constitution and Laws of the United Brotherhood and as may be required to transact and properly conduct its business, viz: Payment of salaries and donations to sick members; purchasing stationery, books, cards, printing, payment of rent, or any legally authorized bill against the Local Union. But under no circumstances shall any of the General

Funds be used for loans or donations to members, Contingent Fund or for political or religious purposes. Violation of this Section subjects the offending Local Union to the penalty of suspension. . . .

"C. The funds or property of a Local Union cannot be divided in any manner among the members individually, but shall remain the property of the Local Union for its legitimate purpose while ten members remain therein.

"D. All moneys paid out of the funds of a Local Union, with the exception of per capita tax and cost of bonds of financial officers, must be by majority vote of the members, for which an order must be drawn on the Treasurer, signed by the President and Recording Secretary, and stamped with the seal of the Local Union. No appropriation of money can be voted after 10:30 p. m."

All dues of Local 2508, when collected, were required by the resolution of the Local to be deposited in a bank account in the name of the local union. In paying its obligations, the local union required that a bill must be first approved in writing by the trustees of the local. The bill was then submitted, with the trustees' approval, to the membership, and if approved by a majority of the members at a regular meeting of the local, the bill was ordered paid. Upon such approval, the recording secretary issued a warrant, which was approved by the president and then delivered to the financial secretary, who was required to execute and sign a check for the amount of the warrant drawn upon the bank account of Local 2508. The checks were required to be signed by the president, as well as the financial secretary.

The officers of the local union were president, financial secretary, recording secretary, and three trustees, and were elected annually. At the annual election of the officers in the third week of June, 1937, the incumbent officers were defeated for reelection, and

officers who favored the Committee for Industrial Organization were elected and took office on or about July 1, 1937.

During the month of July, the Committee for Industrial Organization, which is known as the C. I. O., granted a charter to the International Woodworkers of America, which organization in turn granted local charters to sawmill workers in the Northwest. At the meeting of Local 2508, July 11, 1937, the sentiment favoring the C. I. O. is evidenced by a motion at that meeting that the matter of dividing the funds be postponed until the following meeting. At the meeting of July 15, 1937, a committee was appointed to conduct an election to ascertain whether Local 2508 desired to affiliate with the new organization. The result of the election of July 31, 1937, was 756 in favor of the C. I. O. and 412 in favor of the Brotherhood.

On July 24, 1937, at which time there were approximately 1,700 members in the organization, a regular meeting of Local 2508 was attended by about four hundred members. Anticipating their change of affiliation to the C. I. O., methods were discussed as to the best way for withdrawal of the funds from the local treasury so that they would be available for the new organization. The funds of nine thousand dollars in the treasury comprised an accumulation of dues and initiation fees paid to Local 2508 and no part of which was owing to the Brotherhood — all of that money was the property of Local 2508. An executive committee, consisting of the officers of the organization, was created at the meeting of July 24, 1937, and authorized to dispose of the funds of Local 2508 as the executive committee saw fit.

The executive committee disbursed all the funds in the treasury. Some of the expenditures of the

committee were as follows: To John Brown, President, $600; to R. N. Rosenhall, Financial Secretary, $487.50; to R. N. Inge, Recording Secretary, $450; to John Cairn, Trustee, $15; to John Clearwater, Trustee, $15; to Glen D. Hardy, Trustee, $15; to R. N. Inge, Recording Secretary, $15; to James J. Molthan, $2,000; to John L. Clearwater, Trustee, $500.

The payments to the three officers and the three trustees, personally, were for advanced salaries for the months of August, September and October. A check to Molthan for $2,000 was intended to be used in establishing a so-called legal defense fund. A payment of $500 to John Clearwater was to defray the Labor Day parade expenses, a parade which was to be held after the organization became an affiliate of the C. I. O.

On August 6, 1937, the day before the members of the executive committee, Mr. Radel, and other members seceded from Local 2508, the executive committee paid to Walter Radel $900 for time lost and expenses. On August 7, 1937, the executive committee authorized payment to Mr. Radel of $89.48 for time lost and $36 for repairs to his automobile. No bill was ever presented by Mr. Radel to Local 2508 for the services which he claimed he performed for it.

On August 7, 1937, at a meeting of Local 2508, which was attended by approximately four hundred members, a majority of the members present relinquished their membership in Local 2508 and John Brown, president, R. N. Rosenhall, financial secretary, R. N. Inge, recording secretary and John Cairn, John Clearwater and Glen D. Hardy, trustees of Local 2508, vacated their offices and relinquished membership in Local 2508. The men named, together with the former members in Local 2508 who had just relinquished their membership in Local 2508, organized Local Union

No. 46, Lumber and Sawmill Workers, an unincorporated association chartered by the International Woodworkers of America, which is affiliated with the Committee for Industrial Organization, a rival labor organization of the Brotherhood. About one hundred members, loyal to Local 2508, left the meeting when the chairman announced that the new charter for Local 46 would be installed.

On August 9, 1937, seventeen members remaining loyal to Local 2508 met for the purpose of reorganization of that Local, as all of its officers, as stated above, had joined the Local 46 of the C. I. O. and it was necessary to elect new officers. A meeting of Local 2508 was held on August 13, 1937, and was attended by one hundred members. Since that time, regular meetings have been held by Local 2508, which has continued to function without change in its operations save for the election following the withdrawal of all of its officers and the necessity of electing successors.

A new charter was not issued by the Brotherhood to Local 2508 after August 7th. The original charter issued by the Brotherhood was hanging on the wall of the place of meeting from the time the charter was received by Local 2508 in April, 1935, until the close of the meeting of August 7, 1937, when the group seceding from Local 2508 removed the charter from the wall and refused to surrender it to the group remaining loyal to Local 2508. This made it necessary for a duplicate charter to be issued by the Brotherhood to the loyal group of Local 2508 upon their reorganization by the election of officers on August 9th. The duplicate of the original charter is now in possession of Local 2508.

In addition to the funds removed from the treasury of Local 2508, all of its office equipment was sold to one of the seceding members for five dollars on Aug-

ust 7, 1937, under an agreement that that purchaser would resell the equipment to Local 46 when that organization was perfected. In addition to the furniture, valued at $775.25, and funds listed above, there was a fund known as the "Bellingham Seaside Defense Fund," which aggregated $1,275 and consisted of special assessments for the relief of widows and orphans of the members of the Brotherhood who had been killed in labor disturbances in Oregon. This fund had been paid by Local 2508 to the trustees selected to receive the fund by the unions concerned. The executive committee on July 25, 1937, took out of the general fund of Local 2508 twelve hundred and seventy-five dollars and placed it in the "Seaside Defense Fund" account, either ignorant of the fact of the payment of this fund to the trustees who disbursed it to the widows and orphans concerned, or to conceal the funds of Local 2508.

Prior to August 7, 1937, the members of Local 2508 created a Funeral Benefit Fund. This consisted of collection from the members of twenty-five cents monthly for the creation of the fund. These funds were placed in the general fund of Local 2508 and were paid as needed into a special fund known as "Timber Workers Benefit Fund."

On July 26, 1937, and August 7, 1937, the executive committee paid out of the general fund into the "Timber Workers Benefit Fund," $2,036.60, but there is no showing that that sum was a correct amount belonging to the fund.

Local No. 2508, by its officers, brought this action against certain former members of Local 2508, who seceded therefrom, and against Local No. 46 of the Lumber and Sawmill Workers organized by those former members of Local 2508, for the recovery of property of Local 2508 transferred to, and the recovery of

funds wrongfully paid out of the treasury of Local 2508 for the use of, the new organization, Local 46. While Local 2508 is affiliated with the Brotherhood, the latter is in no manner involved in this action. The cause was tried to the court, which found that plaintiffs were entitled to the recovery they sought, with the exception of certain items, among which was the sum aggregating $1,025.48 paid by the executive committee to Walter Radel August 6 and 7, 1937, and entered judgment accordingly. Defendants appealed. Plaintiffs cross-appealed from that portion of the judgment which denied recovery of the moneys paid by the executive committee to Walter Radel.

May a majority of the members of a local union—an unincorporated association—dissolve the local and transfer the local's funds to another union organized by the majority, or divide the funds among the members of the local, where constitution of parent union prohibits division of local's funds among the members individually if minority of the old local continue their allegiance to the parent union and continue to function under charter originally issued by old parent union? That is the determinative question presented by this appeal.

There is no provision in the constitution or by-laws governing Local 2508 giving the members of the local an individual interest in its assets, and one who secedes or withdraws from that local abandons his interest in the property of the local; and those who remain succeed to it.

"As to the title to personal property of an association, it has been said that it is vested in the individual members, but that one who leaves the association abandons his interest in the property and those who remain succeed to it. How this differs from title in the association is hard to understand. The more satisfactory rule would seem to be that title is in the association.

That is the law of associations for profit. In accordance with this view it has been held that title is in the association, that when a group of members secede from the association, even though they are a majority, they lose all interest in its property, that members have no right to sue for a dissolution and a distribution of its assets, . . ." Wrightington, Unincorporated Associations and Business Trusts, (2d ed.), 351, § 60.

"The question of the rights of a member of an unincorporated association, society, or club in the property held by the organization presents some difficulty. The association, unless made so by statute, has no legal existence and cannot, as such, acquire and hold property. A trustee may be designated to hold the legal title of the property; but in the absence of any such arrangement, property used and ostensibly owned by the association is in fact the property of its members. Such property is beneficially owned in common by the members in equal shares. In other words, as the rule is generally stated, each member of an unincorporated association has an interest in its assets so long as he remains a member, which interest is prima facie equal or proportionate, but which is subject, of course, to the right of the trustees, governing committee, or other board of control to dispose of as provided by the constitution and by-laws which form the contract between the member and the association. Upon dissolution of the association, members are, as a general rule, entitled to have the property distributed among themselves. There are some decisions, principally those dealing with the application of liquor license laws to social clubs dispensing intoxicating liquors, which are to the effect that a member has no individual right or interest in the property or ownership of any proportionate share of it, but only a right to the joint use so long as he continues to be a member. And under any view of the matter, unless the constitution and by-laws of the association otherwise provide, members lose whatever interest they may have in the property upon the termination of their membership during the continuance of the association. A member has no severable or transferable interest or any right to a propor-

tion of the assets upon ceasing to be a member. His interest therein will be terminated by his voluntary withdrawal from the organization or by his expulsion therefrom, provided he is expelled upon some specific charge of some offense which is declared by the constitution or by-laws to be a ground of expulsion following notice and hearing or opportunity to be heard.

"In this regard a contract between the members of an unincorporated association by which the property of each becomes an inseparable part of the capital held in common by the members, no part of which can be demanded by the member on withdrawal, is not a contravention of any law regulating the possession, ownership, or tenure of property." 4 Am. Jur. 463, § 15.

It is a general rule that, upon the dissolution of unincorporated associations, the property of the association is distributed per capita among its members. 4 Am. Jur. 490, § 56. The secession, however, of a majority of Local 2508 was not a dissolution of that local.

A majority of Local 2508 could not change its affiliation and take its property and funds into a newly affiliated association. Only by virtue of the charter issued by the Brotherhood to Local 2508 could the latter admit members. All of the members of Local 2508 came into that local as members of Carpenters' Union No. 2508 of Bellingham, Washington, Lumber and Sawmill workers, to accomplish the objectives and to derive the benefits from membership in that local union which was chartered by, and a subordinate of, the Brotherhood; the constitution of the Brotherhood, the parent body, provided that the local union could not withdraw from the parent body so long as ten members objected thereto; that the funds or property of the local could not be divided in any manner among the members individually, "but shall remain the property of the Local Union for its legitimate purpose while ten members remain therein."

The constitution of the Brotherhood and the charter issued thereunder by the Brotherhood to Local 2508 constitute a contract of the members of the union. Under that contract, so long as ten members of the Local Union remain loyal to the parent body and object to the transfer, the property of the local union can not be transferred to another organization. While all of the members of Local 2508 might, by their own agreement, apply the funds of the local, which of course belonged to all the members, to any purpose deemed desirable, a mere majority at a stated meeting could not make a transfer of the funds or property of the local to another organization in the course of a disruption of the existing local. Of course, within the legitimate purpose of the organization, the members present at a meeting could bind the absentees to the result of a vote taken, but a resolution to dissolve the local itself involved a modification of the contract under which the meeting, as such, had any significance whatever, and as said in *Low v. Harris*, 90 F. (2d) 783,

"A favorable vote upon that resolution had, of course, no bearing upon the property rights of the members who had not consented to the proposition . . .. and title to the fund could not pass to the new organization which the majority of the individuals present at the meeting decided to create."

As stated above, there was not a dissolution of Local 2508. Most of the members of the local seceded, severed all relationship between themselves and the members of the Brotherhood and joined a rival organization, Local Union No. 46, Lumber and Sawmill Workers. Having left Local 2508, they lost their interest in the property and funds of the local they abandoned, and those who remained loyal succeeded to that interest. As said in *Henry v. Cox*, 25 Ohio App. 487, 159 N. E. 101,

"They had a right voluntarily to withdraw and cease to be members, and the court must find that they did so. They could withdraw singly or collectively, but they could not take with them any of the property, whether they left individually or collectively."

The authorities uniformly hold that a majority of the members of a local union—an unincorporated association like the one in the case at bar—can not dissolve the local, transfer funds of the local to another union organized by a majority, or divide funds among members of the local, where constitution of parent union prohibits division of funds or property of local union among the members individually, so long as a minority of the old local continue their allegiance to the old parent union and continue to function under charter originally issued by old parent union.

See *Low v. Harris,* 90 F. (2d) 783; *Henry v. Cox,* 25 Ohio App. 487, 159 N. E. 101; *Brownfield v. Simon,* 159 N. Y. Supp. 1102, 174 App. Div. 872, 225 N. Y. 643, 221 N. E. 858; *Grand Court etc. v. Hodel,* 74 Wash. 314, 133 Pac. 438, 47 L. R. A. (N. S.) 927; *Shipwrights etc. Ass'n v. Mitchell,* 60 Wash. 529, 111 Pac. 780.

*Shipwrights etc. Ass'n v. Mitchell, supra,* is cited by appellants to sustain the theory that the appellant union has maintained the same entity from the time of its organization prior to 1935 as a federal union, and that the change in affiliation from the Brotherhood to the C. I. O., its present affiliation, was only a change in name. An examination of that case will disclose that the members of the local left the old organization and reorganized, while in the case at bar a certain number seceded from Local 2508, which continued to function. The authority cited is inapt.

Respondents are entitled to recovery of $1,025.48 paid by the executive committee to Walter Radel Aug-

ust 6 and 7, 1937, for time lost, expenses and automobile repairs. Under the provisions of § 58-D of the constitution of the Brotherhood, the accounts of Mr. Radel should have been approved by a majority vote of the members of Local 2508 in open meeting. That was not done. The members of Local 2508 were never afforded an opportunity to determine the correctness of the accounts presented by Mr. Radel. The testimony of Mr. Radel sustains the challenge to the validity of those accounts. He testified that he worked for Local 2508 for a period of years and attended conventions. He did not attend as a regular delegate or as an officer of the organization. He admitted he never presented a bill to Local 2508 for such services, and he never asked for payment at a regular meeting in the regular manner. We are convinced that this was another attempt on the part of the executive committee to deplete the treasury of Local 2508 before seceding from that organization.

Local 2508 never validly transferred its funds and property described above. The action of the majority of the members of Local 2508 in severing their relations with that local and organizing a local union affiliated with the C. I. O., did not constitute a dissolution of Local 2508, it appearing that more than ten members of Local 2508 remained loyal to the parent union, and upon the withdrawal of a majority proceeded to elect officers, hold meetings, and function under the same charter as was originally issued by the Brotherhood.

The judgment is affirmed on the appeal and reversed on the cross-appeal.

STEINERT, C. J., MAIN, BLAKE, ROBINSON, and SIMPSON, JJ., concur.

Beals, J. (dissenting)—For the reasons stated in my dissent in case No. 27194, *Lumber & Sawmill Workers Union No. 2623 v. International Woodworkers etc., post* p. 491, 85 P. (2d) 1099, I dissent from the conclusion reached by the majority in this case.

Geraghty and Holcomb, JJ., concur with Beals, J.