## A. R. LIGGETT AND OTHERS v. ILMAR KOIVUNEN AND OTHERS.[1]

October 29, 1948.

No. 34,643.

[1]Reported in 34 N. W. (2d) 345.

*Hall, Smith, Enkel & Hedlund,* for appellants.
*William D. Gunn,* for respondents.

MATSON, JUSTICE.

Appeal from an order denying defendants' motion for amended findings or a new trial in an action for injunctive relief.

Plaintiffs are members of a voluntary unincorporated labor association—affiliated with the American Federation of Labor—known as Local No. 49 International Brotherhood of Pulp, Sulphite and Paper Mill Workers Union of International Falls, Minnesota, hereinafter designated as Local 49. The defendants are sued as officers of Local 49 and as officers and members of a rival labor association—affiliated with the CIO—known as Local No. 12-33 International Woodworkers of America and hereinafter designated as Local 12-33. Defendants are also sued as members and representatives of a purported International Falls Benefit Association. Plaintiffs brought this action to enjoin defendants from transferring or attempting to trans-

fer certain property and moneys of Local 49, inclusive in particular of about $20,000 belonging to a benefit fund maintained by Local 49 under the legend of the Sick Relief Association and Burial Benefit Association of Local 49.

Local 49 has continuously existed since 1916 pursuant to a charter issued in that year by its parent organization, the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, herein called the International. By the terms of its charter, Local 49 has at all times been governed by the constitution and bylaws of the International, which specifically provide that no subordinate local shall be dissolved while seven members are willing to continue the same. Each local may make bylaws, not in conflict with those of the International, to govern the actions of its own members.

From 1916 to June 19, 1946, Local 49 was the collective bargaining representative of the "Pulp and Sulphite Workers" unit of the Minnesota & Ontario Paper Company at International Falls. Prior to June 19, 1946, certain members of Local 49 became dissatisfied and joined Local 12-33. Prior to the same date, in an election conducted by the National Labor Relations Board, the members of Local 49, exclusive of plant guards and clockmen, by a large majority voted to designate the International Woodworkers of America, Local 12-33, as their bargaining agent. As a result, said board on June 19, 1946, certified Local 12-33 as bargaining representative of such employes, with the exception of the plant guards and clockmen, for whom Local 49 remained the bargaining representative. Since sometime after June 24, 1946, members of Local 49 in excess of seven in number, or of a total of about 45, have remained as paid-up members in good standing and desire to continue the existence of Local 49. About 15 of this number are plant guards and clockmen.

The controversy herein relates to the disposition of about $20,000 in a benefit fund established and maintained by Local 49. In 1918, at a regular meeting of Local 49, it was voted to establish a sick relief fund known as Local 49 Sick Relief Association. A burial benefit fund was added thereto in 1933. It is not clear from the evidence whether any regular bylaws for the regulation of the benefit associa-

tion existed prior to 1935, but in that year, at a regular meeting of Local 49, a set of written bylaws entitled "By Laws for Sick Relief Association and Burial Benefit Association of I. B. of Pulp Sulphite and Paper Mill Workers Union Local 49" was adopted. The evidence indicates that these bylaws merely formalized in writing what had been substantially the established practice. Although the term "association" is used in the title, it is clear that no association or organization separate and independent of Local 49 was ever intended or established. As clearly revealed by the provisions of these bylaws and by the procedure followed in allowing claims for sick relief and funeral benefits, the so-called benefit association was in fact merely a special fund or department classification of Local 49. As succinctly stated by the trial court:

"* * * no separate association for the administration of said sick relief and funeral benefit funds of said Local No. 49 was ever set up or maintained, and that no officers were ever provided for or elected for any separate association for the administration of such funds, and no meetings of any such separate association were ever provided for or held for the handling of the business in connection with such funds; but all moneys for the said sick relief and funeral benefit funds were collected by the officers of said Local No. 49 and as a regular part of the dues of said Local No. 49, that claims on said funds by members of said Local No. 49 who were entitled thereto were presented to the said Local No. 49 at its regular meetings and allowed by such local at such meetings or referred to its sick committee consisting of regular officers of said Local No. 49; that the moneys in said sick relief funeral benefit funds were kept in the name of the sick relief or funeral benefit funds of the International Falls Local No. 49, Pulp, Sulphite and Paper Mill Workers, and orders for payment of such claims were designated and drawn on such fund and not by any separate association, and were signed by the president and secretary of said Local No. 49; that the By-Laws governing the control of such funds were adopted and acted upon by said Local No. 49 at its regular meeting and not at any meeting of any separate association, * * *."

The bylaws explicitly state that the purpose for which the benefit fund was established was to provide certain sick relief and funeral benefits *for members of Local 49 whose dues are either paid up or are not in arrears for more than 60 days.* In other words, no benefits were to be provided for nonmembers of Local 49 or for members thereof not in good standing.

On June 24, 1946 (five days after Local 12-33 had been certified as the new bargaining representative for all employes except the plant guards and clockmen), at a regularly called meeting of Local 49, a motion was made to amend the bylaws governing the Sick Relief Association and Burial Benefit Association. This motion was passed by *a majority vote of the members of Local 49 present at the meeting. A substantial minority of members, constituting considerably more than seven in number, were present and objected to this motion on the grounds that it was unlawful, illegal, and void.* The purported amendment provided in part that (1) the name be changed to The International Falls Benefit Association; (2) that those entitled to membership in the association should include persons who had never been members in Local 49, provided they were employed in certain listed units of the Minnesota & Ontario Paper Company and were members in good standing of *a* union; (3) that all moneys, securities, and properties of the Sick Relief Association and Burial Benefit Association be transferred to the name of The International Falls Benefit Association; (4) that dues of 50 cents per month be paid directly to the association by each member thereof; and (5) that the association be managed by a board of trustees elected directly by members of the association. In short, the purported amendment, if carried into effect, would convert the benefit association, which up to that point had been nothing more than a fund or a department of Local 49 for the exclusive benefit of Local 49 members, into an organization existing wholly independently of Local 49 and operated for the benefit of all employes without regard to which union they belonged.

After June 24, 1946, efforts were at once made to secure a transfer of the benefit fund proceeds to the new association, The International

Falls Benefit Association. In restraint of these efforts, a temporary injunction was issued, and upon trial and findings by the trial court the injunction was made permanent. Defendants appeal from an order denying their motion for amended findings or a new trial.

Although defendants admit that the general rule governing the disposition of the funds of an unincorporated association, in the event of a schism, is that such funds may not be diverted from the organic purpose for which such funds were raised, they contend that the rule is limited in its application to the general funds and property of the local organization and does not apply to funds raised by the local unit for the sole benefit of its local members, and that the disposition of such strictly local funds may be determined by a majority of the members, subject to the rights of the minority according to their proportionate shares therein. Defendants contend that the sick relief and benefit funds here involved are local and belong to all the members, and that equity and justice require that the funds be impressed with a trust for the purpose of distributing the same among those members who were in good standing *at the time of the withdrawal of the majority of the members* from Local 49. In support of their contention, defendants have cited several cases which have no application to the facts herein. Obviously, to cite as authority a decision cut loose from the facts upon which it is based is as unreliable as a wind-swept balloon cut loose from its moorings. In determining the applicable decisions and principles, it is necessary to bear in mind that:

(a) We are not here confronted with a factual situation involving a dissolution of the local unit.[2] Local 49 has never been dissolved and is a going concern;

(b) We are not dealing with the situation that would arise if the dispute over the funds were between the local unit and the parent organization, the International[3]; and

[2]See, Scott v. Donahue, 93 Cal. App. 126, 269 P. 455; Restatement, Trusts, § 411, *comments m*(14), *n;* 4 Am. Jur., Associations and Clubs, cf. §§ 33 and 56; 7 C. J. S., Associations, § 10.

[3]See, Detroit Sav. Bank v. Haines, 128 Mich. 38, 87 N. W. 66; Grand

(c) We are not confronted with a perpetration of any fraud by the minority upon the majority. The majority members withdrew from Local 49 of their own free will.[4]

■ It is well settled that the constitution and bylaws of an unincorporated association, if they are not immoral, contrary to public policy or the law of the land, or unreasonable, constitute an enforceable contract between the members by which their rights, duties, powers, and liabilities are measured.[5] An individual in becoming a member impliedly agrees to abide by, and becomes a party to, this contract.[6]

As already noted, Local 49 has never been dissolved, in that substantially more than seven members have at all times desired that it should continue. Defendants apparently assume, however, that the bylaws adopted by Local 49 for the regulation of the sick relief and burial benefit funds are of less sanctity than those provided by the International and that they do not therefore attain the dignity of a contract among the members. In this they are in error. Clearly, no distinction from a contractual standpoint is to be made between the

Court, etc., v. German-American Foresters, 192 Mich. 380, 158 N. W. 832; National Circle v. Hines, 88 Conn. 676, 92 A. 401; State Council U. A. M. v. Emery, 219 Pa. 461, 68 A. 1023, 15 L.R.A.(N.S.) 336, 12 Ann. Cas. 870; Donovan v. Danielson, 271 Mass. 267, 171 N. E. 823; Restatement, Trusts, § 411, *comments* m(14), n.

[4]See, McFadden v. Murphy, 149 Mass. 341, 344, 21 N. E. 868, 869.

[5]State v. Postal, 215 Minn. 427, 10 N. W. (2d) 373; Harris ex rel. Carpenters Union v. Backman, 160 Or. 520, 86 P. (2d) 456; Lumber & Sawmill Workers Union v. Int'l Woodworkers of America, 197 Wash. 491, 85 P. (2d) 1099; Local No. 2508 Lbr. & Sawmill Workers v. Cairns, 197 Wash. 476, 85 P. (2d) 1109; Local No. 2618 Plywood & Veneer Workers v. Taylor, 197 Wash. 515, 85 P. (2d) 1116; McFadden v. Murphy, 149 Mass. 341, 21 N. E. 868; Amalgamated Clothing Workers v. Kiser, 174 Va. 229, 6 S. E. (2d) 562, 125 A. L. R. 1251; 4 Am. Jur., Associations and Clubs, § 9; 7 C. J. S., Associations, § 11b; Dangel and Shriber, Labor Unions (1941) §§ 99-101.

[6]Amalgamated Clothing Workers v. Kiser, 174 Va. 229, 6 S. E. (2d) 562, 125 A. L. R. 1251; Evans v. Johnston, 300 Ill. App. 78, 20 N. E. (2d) 841; Snay v. Lovely, 276 Mass. 159, 176 N. E. 791; Simpson v. Grand International, 83 W. Va. 355, 98 S. E. 580.

bylaws originating with a local unit and those derived from the parent organization when they are not in conflict.

■ As revealed by the terms of the bylaws adopted for the regulation of the sick relief and burial benefit funds, the members made a contract with each other pursuant to which these funds were raised for and dedicated to the organic purpose of providing sick relief and burial benefits only for the members of Local 49 who were in good standing. Here, the majority sought to make the benefits available for individuals outside the membership of Local 49. No bylaw provision authorizes a change in organic purpose by a mere majority vote. The rights of the minority established by contract with respect to either general or local property cannot be ignored. No number of the members of an unincorporated association less than the whole can divert the funds to purposes other than those specified in the organization's constitution and bylaws. The majority undoubtedly can direct the use of the funds of the association within the scope of its declared purposes, and when there are two or more purposes for which the funds may be used the majority may select between them, but the majority cannot, against the will of the minority, lawfully divert such funds for uses other than those permitted by the constitution and bylaws.[7]

■ Aside from any change in organic purpose, the attempted transfer of the benefit funds from Local 49 must fail. It is the general rule that the majority of the members of a local union (an unincorporated association) cannot, contrary to the wishes of a minority, transfer the funds of the local to another organization as long as the minority members (in excess of seven in number in this instance) continue their allegiance to the parent union and continue

---

[7]Harris ex rel. Carpenters Union v. Backman, 160 Or. 520, 86 P. (2d) 456; McFadden v. Murphy, 149 Mass. 341, 21 N. E. 868; Local No. 2508 Lbr. & Sawmill Workers v. Cairns, 197 Wash. 476, 85 P. (2d) 1109; Local No. 2618 Plywood & Veneer Workers v. Taylor, 197 Wash. 515, 85 P. (2d) 1116; 7 C. J. S., Associations, § 27a; Dangel and Shriber, Labor Unions (1941) §§ 229, 235.

to function under the original charter issued by the parent union.[8]

 Defendants assume, however, that the interest of individual members in the property of a local union is of such a nature that if a majority of them withdraw in a body they are then as a matter of equity entitled to have the property impressed with a trust for the purpose of distributing to the majority group a proportionate share. We have already emphasized that we are not confronted with the problem that would arise if Local 49 had been dissolved. A dissolution of the relation existing between a member and the local must be distinguished from a dissolution of the local itself. 4 Am. Jur., Associations and Clubs, § 56. We are likewise not dealing with a situation impregnated with an element of fraud. The majority members withdrew of their own free will. Issues that might arise out of fraud or out of a dissolution of the local are not before the court. What rights, however, have individuals who withdraw as members of an unincorporated union? In Harris ex rel. Carpenters Union v. Backman, 160 Or. 520, 526, 86 P. (2d) 456, 458, the court said:

"* * * Like all other unincorporated voluntary associations, by becoming a member, unless the articles or laws of the association provide otherwise, a person acquires not a severable right to any of its property or funds, but merely a right to the joint use and enjoyment thereof so long as he continues to be a member."

The general rule is that:

"In the absence of provisions in the constitution or by-laws giving members an individual interest in the assets of a voluntary association, members who withdraw thereby lose their rights to associate property, title to which stays in the members remaining in the as-

[8]Low v. Harris (7 Cir.) 90 F. (2d) 783; Local No. 2508 Lbr. & Sawmill Workers v. Cairns, 197 Wash. 476, 85 P. (2d) 1109; Harris ex rel. Carpenters Union v. Backman, 160 Or. 520, 86 P. (2d) 456; Henry v. Cox, 25 Ohio App. 487, 159 N. E. 101; McFadden v. Murphy, 149 Mass. 341, 21 N. E. 868; Grand Court v. Hodel, 74 Wash. 314, 133 P. 438, 47 L.R.A.(N.S.) 927; Brownfield v. Simon, 94 Misc. 720, 158 N. Y. S. 187 (affirmed, 174 App. Div. 872, 159 N. Y. S. 1102, affirmed, 225 N. Y. 643, 121 N. E. 858); Dangel and Shriber, Labor Unions (1941) § 229.

sociation, and the rule applies whether membership is terminated by the member's own act or omission or by the act of the society. This rule applies even where a number of members secede in a body, and although they constitute a majority, and organize a new association. In such case the remaining members, and only they, are entitled to the entire funds and property of the association, so long as they continue to keep it alive and adhere to its purposes." 7 C. J. S., Associations, § 27b.[9]

■ In withdrawing from Local 49, the majority members voluntarily abandoned not only their membership status, but also the interest in the association property which that status gave them. Whatever enrichment has thereby been conferred upon the minority has been conferred without the exercise of fraud or of any other factor justifying equitable intervention by the court. Individuals who join a union or other voluntary association are reasonably chargeable with notice of the contractual membership obligations and liabilities which the constitution and bylaws impose, and they can be expected to foresee that they may at some future time wish to change their membership affiliation. It is not the province of a court of equity to rewrite or abrogate contracts to protect parties from those consequences which are attendant upon their voluntary abandonment of the contract and which consequences were reasonably foreseeable when the contractual obligations were assumed. 19 Am. Jur., Equity, §§ 33 and 70.

The order of the trial court is affirmed.

Affirmed.

---

[9]See, Alchenburger v. Freundschaft Lodge No. 72, D. O. H., 138 Ill. App. 204 (affirmed, 235 Ill. 438, 85 N. E. 653); McFadden v. Murphy, 149 Mass. 341, 21 N. E. 868; Altmann v. Benz, 27 N. J. Eq. 331; Harris ex rel. Carpenters Union v. Backman, 160 Or. 520, 526, 86 P. (2d) 456, 459; Ostrom v. Greene, 161 N. Y. 353, 55 N. E. 919; Henry v. Cox, 25 Ohio App. 487, 159 N. E. 101; Schiller Commandery No. 1, U. F. M., v. Jaennichen, 116 Mich. 129, 74 N. W. 458; 4 Am. Jur., Associations and Clubs, §§ 33 and 56; Wrightington, Unincorporated Associations and Business Trusts, § 60, p. 351; Dangel and Shriber, Labor Unions (1941) § 229.