THE TRUSTEES OF THE M. E. PROTESTANT CHURCH, AT JEFFERSON, RESPONDENTS, *v.* S. B. ADAMS, APPELLANT.

UNINCORPORATED SOCIETIES MAY BECOME BENEFICIARIES OF A SPECIFIC TRUST.—
Unincorporated societies, created for religious or benevolent purposes, when organized so as to entitle them to become incorporated under the laws of the State, are capable of becoming the beneficiaries of a specific

trust created for their benefit, and our Courts will, in the exercise of a chancery jurisdiction, enforce such trusts.

Trustees of such Societies may Sue.—The trustees and agents of such societies have legal capacity to sue, when the suit is brought for the benefit of the association.

Appeal from Marion County.

The facts are stated in the opinion of the Court.

*Mallory & Shaw,* for Appellant.

There was no society in existence at the time the grant is alleged to have been made. There was therefore no one to take the grant and it is void. (*Trustees of Baptist Association* v. *Hart's Executors,* 4 Wheat. R. 1.) If the grant was not good at law, it cannot be sustained in equity; nor will it be favored as a charity. The law applicable to grants to charity is the same in this country as that applicable to other grants. (Id. 333–344; *Owens* v. *Missionary Society,* 14 N. Y. 406, 407, 408; *Bascom* v. *Albertson,* 34 N. Y. 585–621; *Fontain* v. *Ravenel,* 21 Curtis, 563.) A grant or devise to a voluntary unincorporated association cannot be sustained. (14 N. Y. 407; *Jackson* v. *Carey,* 8 John. Ch. R. 385; *Hombeck* v. *Westbrook,* 9 John. Ch. R. 73; 21 Curtis, 563.) A voluntary association cannot confer upon itself corporate power and give to itself the quality of perpetual succession. (*Austin* v. *Leasing,* 16 N. Y. 118–123; 4 Curtis, 339.) The statute of charitable uses is not in force in this country; nor is the prerogative or *cy-pres* power, conferred upon the Chancellor of England, possessed by Chancellors in America. (4 Wheat. R. 1; 4 Curtis, 336–340, 343; *Bascom* v. *Albertson,* 34 N. Y. 612–616; 17 How. (S. C.) 387; 21 Curtis, 558, 565, 566; Mis. Laws, ch. 3.)

*Williams & Willis,* for Respondents.

A conveyance of land to certain persons and their successors in office as trustees for an unincorporated religious society is good, and a bill in equity may be maintained for the benefit of such society, in the names of those persons, members of such society, selected by such society as the

successors in office of those trustees named in the deed, to correct a mistake in the deed in the description of the land, or to compel the specific performance of a contract to convey. (2 Pet. R. 578; 8 Curtis, 212; 1 Hoffm. Ch. R. 142; 3 Pet. R. 114; 1 Hoffm. Ch. R. 202, 238, 264; 7 Vermont, 241.) A bequest of property to trustees, to be paid by them to an unincorporated society, to be by such society expended, is good. (45 Maine, 122.) A devise will be held good made to the minister and wardens, and their successors in office, of a church, without naming them, and an action may be maintained, in the name of the successors, for injury to the property. (9 Mass. 501.)

The case of grants and dedications to public and religious uses, forms an exception to the general rule applicable to private grants, which requires a grantee capable of taking the estate; whereas, in the former, the grant may take effect, although there be no grantee *in esse*. (45 N. H. 98; 6 Pet. R. 431; 9 Cranch, 292.)

By the Court, Thayer, J.:

It is alleged in the complaint in this suit—

That the plaintiffs are the regularly elected and acting trustees and agents of the Methodist Protestant Church of the town of Jefferson, in Marion County, in the State of Oregon.

That on the 5th day of June, 1857, one James Bates, being then the owner and in possession of the following described premises, to wit: Commencing at the southwest corner of the Institute lot on the land claim of James Bates, in the town of Jefferson, in Marion County, Oregon; thence running south on the section line eighty-six feet; thence west eighty-six feet; thence north eighty-six feet; thence east eighty-six feet, to the place of beginning—gave the same to the Methodist Protestant Church. And the said Bates, and Margaret, his wife, for the purpose of securing said land to said church, the same not being then organized, executed and delivered to one E. E. Parrish, who was at that time a member of said church, a deed duly executed, supposed to be and intended as a deed of

conveyance thereof; and said Parrish received said deed for the purpose of holding and securing said land to said church, the members thereof consenting to the same.

That subsequently, and on the 20th day of July, 1858, the said church being then duly organized, said Parrish, and Rebecca, his wife, intending to carry out the intention and understanding with said Bates and the members of said church, undertook, by their deed duly executed, to convey said land to Henry Martin, S. W. Knox, Lewis Jones, B. B. Cox and Jabez Terhune, the then trustees of said church, and to their successors in office, for the use and benefit of said church.

That at the time of the delivery of said deed to said Parrish, he and the other members of said church took the possession of said land, and erected thereon a house for the use of said church and the members thereof, as a place of worship, at great trouble and expense.

That at the completion of said house, the same was regularly dedicated, and that the trustees of said church, and the members thereof, have continuously ever since held, used, occupied and enjoyed said house and land as a place of public worship for the use of said church and the members thereof.

That said Bates at the time advised and assisted in the construction of said house, and has ever since, to within a very short time, consented to the maintenance of said building upon said premises for the use aforesaid.

That there is a mistake in the deed from said James Bates and wife to said E. E. Parrish, and in the deed from said Parrish and wife to the said Henry Martin and others, trustees as aforesaid, in that said land as described in said deeds is described as commencing at the northwest corner of the Institute lot, when the same should have been described as commencing at the southwest corner of said lot.

That said mistake was made by the parties who wrote said deeds, and was not discovered by the parties thereto until long after the execution thereof.

That on the 29th day of January, 1870, the defendant, S. B. Adams, for the purpose of cheating, wronging and

defrauding plaintiffs, and the other members of said church, out of said lands and the said buildings, fraudulently colluded with said Bates and wife, and, without consideration, procured from said Bates and wife a deed of said premises.

That said defendant knew at the time of, and prior to his obtaining said deed from said Bates and wife, all the facts in relation to the ownership and possession of said premises charged in the complaint.

Plaintiffs prayed relief; that the defendant execute and deliver to them, as such trustees, a conveyance of said premises for the use and benefit of said church, and that the defendant be barred and estopped from ever after setting up any claim thereto.

The defendant interposed a demurrer to the complaint upon the following grounds:

1. That the complaint did not show that the plaintiffs have legal capacity to sue.

2. That the complaint showed a defect of parties plaintiff.

3. That the complaint showed a defect of parties defendant.

4. That the complaint did not state facts sufficient to constitute a cause of suit.

If it be conceded that the proper parties were before the Court, and that the plaintiffs had legal capacity to sue, there would be no difficulty in determining the case at once. There is no question but that the complaint is sufficient to constitute, as between proper and competent parties, a cause of suit. The demurrer admits the complaint to be true, and the correcting of a mistake by reforming a deed so as to make it include a description of premises which the parties intended it to cover, has always been an acknowledged branch of equitable jurisdiction.

The main question to be determined is: Had the plaintiffs legal capacity to sue under the circumstances of this case, and the right to claim the relief decreed by the Circuit Court herein?

This question leads to an examination of the rights and capacities of voluntary associations in the State of Oregon, such as organized churches, and religious, benevolent,

literary and charitable societies, and the jurisdiction of Courts of equity respecting the same. I do not understand that it is claimed that a society of that character is clothed with the legal capacity of an individual to any extent. Such societies are very numerous, and wield an extensive and important influence in community. They are really the instrumentalities through which religion and learning are disseminated and charity exercised throughout the land, to a great extent, at least. The statutes of the State recognize their existence and provide for their incorporation.

Chapter 3, Miscellaneous Laws, prescribes the requirements necessary to their incorporation. They must have an organization before they can become incorporated; and subdivision 3 of § 4 of said chapter requires that the estimated value of property and money *possessed* by "said church," etc., shall be specified in the articles of incorporation.

Again, the articles must be made by the officers or trustees of such association. This is a clear recognition of such organizations and of their right to possess property. Upon the incorporation of the association such property is transferred by act of law to the corporation. (*Happy* v. *Morton*, 33 Ill. 398; *Merrill* v. *McIntyre*, 13 Gray, 157.)

It has been repeatedly held, that an unincorporated society is capable of receiving a bequest, and that a Court of chancery will enforce the same. (*Coggeshall and others, Trustees of New Rochelle* v. *Patton and others*, 7 John. Ch. 291; *Hornbeck* v. *American Bible Society*, 2 Sand. Ch. R. 133; *Wright and others* v. *Trustees of the M. E. Church*, 1 Hoff. Ch. 222; *Potter* v. *Chapin and others*, 6 Paige R. 639; *King* v. *Woodhull*, 3 Edward Ch. 79; *Executors of Burr* v. *Smith*, 7 Vt. 241; *Bartlett* v. *Nye*, 4 Metc. R. 378.)

In the case of *Owens* v. *Missionary Society of the M. E. Church* (14 N. Y. 380), some doubts were expressed as to the soundness of these authorities. Judge Selden, who announced the opinion of the Court in that case, asserted that a devise or bequest to an unincorporated association was, in general, void, as well in equity as at law; he admitted, how-

ever, that such bequests were, in certain cases, sustained, but affirmed it was only by virtue of the jurisdiction exercised by the Courts of equity in regard to charitable uses. His conclusions upon that point were: That where a bequest was made to an unincorporated society, whose general objects were known to be "religious" or "charitable," a trust might be implied, that the general fund would be devoted to those objects. (14 N. Y. 387.) It will be seen, by a careful examination, that this case does not decide that an unincorporated society cannot receive a bequest, but that its right, in that respect, will depend entirely upon the question as to whether the general objects of the society are known to be "religious" or "charitable;" and if so, a trust may be implied, that the fund will be devoted to such objects and the bequest upheld as a charity.

In the case of *Potter* v. *Chapin*, before cited, the Chancellor lays down the proposition, that a gift, bequest, or dedication of property to public or charitable uses (provided the same is consistent with local laws and public policy), where the objects of the gift or dedication are specific and capable of being carried into effect according to the intentions of the donor, will be sustained and protected by the Court of Chancery. The same proposition was affirmed in the case of *Perin* v. *Casey et al.*, 24 How. U. S. 501.

In *Bartlett* v. *Nye* (4 Met.) before cited, it was held that a devise of real estate to an unincorporated society for charitable uses, was valid, and that equity would enforce the trust as against the heirs; but the peculiar jurisdiction of the Court of Chancery over the subject of charitable uses, as it existed at common law and under the statute of 43 Elizabeth, and exists in many of the older States, where, as in Massachusetts, the principles of the statute of 43 Elizabeth still prevail, does not particularly affect this case. Equity jurisdiction, as administered by the Courts of this State, derives its authority from the Constitution and laws of Oregon, and includes only the ordinary jurisdiction of the Court of Chancery of England, modified and extended by the statutes of this State, and the changes in the condi-

tion of the affairs of our community.  I refer to these authorities more particularly to show that voluntary associations are recognized in law as having a capacity for certain purposes, and it is conclusive to my mind that such associations in Oregon, when organized so as to entitle them to become incorporated under the laws of this State, are capable of being the beneficiaries of a specific trust created for their benefit, and that our Courts, in the exercise of chancery jurisdiction, will, in a proper case, enforce the same.

I do not hold that such societies can take and execute a trust.  As societies they cannot be trustees so as to be vested with legal title.  It was decided in the case of the *Baptist Association* v. *Hart's Executors* (4 Wheat. 1) that a voluntary association was incapable of taking and executing a trust, and, so far, that decision is approved.  Nor can such an association take or hold title to real estate.  An unincorporated society is not competent to take an estate in fee.  (*Hombeck* v. *Westbrook*, 9 John. Ch. R. 73.)  It cannot, however, be denied but that such associations have property rights.  They certainly have the right to use and enjoy the means necessary to maintain their organization and the consequent right to be protected in the possession thereof.  They possess, at least, a *limited* legal *status*.

Take the case at bar.  Can any one reasonably claim that this church had no right to use and enjoy a piece of land, eighty-six feet square, for the purposes of erecting thereon and maintaining a church building?  Would such a use conflict with public policy, or be inconsistent with local law?  Are not such rights accorded to every religious society in the land?  It was a use of property essential to its organization.  The members of the church must have a place to congregate, and they certainly ought not to be compelled to subject themselves to an action for trespass in so doing, nor should they have to depend upon the generosity of mankind for such privileges, and yet if it be true that voluntary church associations cannot be the beneficiaries of real property, for any purpose, and their rights to the use thereof be enforced in a court of justice, what assurance would the members and attendants have that they could

meet and worship, according to the dictates of their faith and conscience, with any degree of freedom or security? This would present a state of affairs not altogether unlike that which existed in the first centuries, when it was regarded as an offense for Christians to assemble in the name of the Saviour.

It appears from the complaint in this case that the proprietor of the land in controversy, James Bates, set it apart for the use and benefit of the Methodist Protestant Church of the town of Jefferson in Marion County, as a site for the erection of a house for public worship, intending to give the same to the church for that purpose. That in order to carry out such intention, said Bates and wife executed a deed to one E. E. Parrish, intending to convey the said land to Parrish for the use and benefit of said church for the purpose aforesaid, and that Parrish received said deed for the purpose of holding and securing said land to said church for such purpose, the members thereof consenting thereto. That after the church became organized and had elected trustees according to the discipline of said church, Parrish and his wife executed a deed to Henry Martin and four others, then such trustees, and to their successors in office, intending thereby to carry out the intention and understanding with said Bates and the members of said church. That Bates at the time was a member of said church, and after the execution of the deed by him to Parrish he and the other members thereof took possession of said land and erected and built thereon a house for the use of said church and themselves as a place of worship, under the impression, no doubt, that the perpetual use of the land was secured for the uses and purposes mentioned. That after the completion of said house the same was regularly dedicated, and they have continuously ever since held, used and enjoyed the same, and said land, as a place of public worship according to the usages of the Methodist Protestant Church. If there had been no misdescription in the deed from Bates to Parrish the land would have been conveyed and the members of the church been secured in its enjoyment.

The principle recognized in the case of *Vidal* v. *Girard's Executors* (2 How. U. S. 127), would no doubt apply.  This, in fact, would be a much stronger case than that.  A difficult question arose there.  First, as to the capability of the corporation of the City of Philadelphia to take under a devise of real and personal estate in trust for the purpose intended.  And second, the beneficiaries of the trust were uncertain.  Here there is no doubt as to Parrish being competent to receive the title to the land in the character of trustee, and no uncertainty in identifying the beneficiaries.

The gift was for a specific purpose, and I hardly think any one will question the right of Bates to appropriate his land to the purpose intended ; but owing to this mistake the legal title never passed to Parrish, and was not conveyed to Martin and the other trustees for the like reason, and probably would not have been conveyed to them under any circumstances.  The grantees in the deed from Parrish, to wit, "Trustees and successors," etc., doubtless rendered it entirely too uncertain to pass the title; but this question need not be determined in this case.

The defendant Adams, as shown by the complaint, has attempted to take advantage of the condition of affairs occasioned by the mistake in the deed to Parrish, and through collusion with Bates, has procured from him a deed to the land and appurtenances, intending to wrong this association and its members out of the same; and the question to be determined is, has the society or its members, under the circumstances of the case, any remedy.

It was claimed by the appellants' counsel upon the hearing, that the society in question, not then being organized, had no existence at the time the grant of the land was attempted to be made, and that consequently the grant was void.  I cannot indorse this view.  Bates made the deed to Parrish in trust for the benefit of this society.  Parrish was a competent grantee, and the fact that the society was not then in a condition to receive the benefit of the trust as an organized association, did not prevent it from claiming such benefit after it became organized.  While the law

requires a present competent grantee to receive title, yet a beneficiary or *cestui que use,* though not in existence at the time of the grant, may be competent to claim the benefit when ushered into being.

It is a principle of the common law that the fee to real property cannot be granted to commence *in futuro.* The title cannot remain in abeyance, but must immediately vest or not pass at all; but its use may be limited to such objects and purposes as the owner may deem proper, if legitimate; the grantor having the absolute *jus disponendi* of the property may annex such conditions to its enjoyment as he may desire, if consistent with public law. The use may be to some object thereafter to be established. (*Inglis* v. *Sailors' Snug Harbor,* 3 Pet. 99.) If there is a competent grantee and a beneficiary capable of being identified the conditions of the law are answered. (*Dutch Church in Garden Street* v. *Mott,* 7 Paige Ch. R. 77.)

The respondent's counsel claims that grants and dedications to public and religious uses form an exception to the general rule applicable to private grants, and may take effect although there be no grantee *in esse.* I concede that lands may be dedicated by the owner to public or pious uses, and that when the public have entered upon the use of the land so dedicated, so that to allow it to be reclaimed would be unjust, the dedication becomes irrevocable. (*Beatty* v. *Kurtz,* 2 Pet. R. 566; *City of Cincinnati* v. *White's Lessees,* 6 Pet. R. 431.)

If such dedication can be regarded in the nature of a grant, it constitutes the only exception that I am aware of where a grantee *in esse* can be dispensed with. I am rather inclined to agree with the appellants' counsel that the law applicable to grants to charitable uses is the same in this country as that applicable to other grants, unless a dedication may be included under the head of grants. But I am satisfied that the transaction between Bates and Parrish in regard to making the deed of June 5, 1857, and the fact that the members of the society in question, relying upon the same, took possession of the land in controversy, built the house thereon as a place of worship, and used the same

with the consent and approval of all parties, creates in
equity a good and valid trust in favor of the society, which
Bates had no right to violate; and that the deed from Bates
to Parrish constituted, in equity, at least, an agreement to
convey the land; and the subsequent entry by the members
of the society into the possession and expenditure of money,
as shown by the complaint, upon the faith of such trans-
action, renders such agreement valid and binding upon
Bates and his grantees, who might take the title with notice
thereof.

The rule ordinarily is, that a mere stranger to an execu-
tory contract between third persons cannot avail himself
of the benefits of its provisions, although named therein as
a beneficiary; but where the contract is of such a nature
and has been so far acted upon as to change the condition
in life of the stranger, and to raise reasonable expectations
in him, grounded upon the contract, it constitutes an ex-
ception to the general rule. This case clearly comes within
the principle of the exception. It is not at all probable
that the members of this society would have entered upon
the land in question, and built and erected, at great cost
and trouble, the church edifice referred to, if Bates had not
proposed to give them the land in question and executed
the deed to Parrish with that intent; that transaction must
have raised expectations of that character in their minds,
and induced them to do as they did in that respect; and
now to permit Bates, notwithstanding this, to dispose of the
land in disregard of the rights of the association, would be
in violation of common honesty and fair-dealing. The de-
fendant Adams having taken the title with full notice of the
facts, must therefore be regarded as a trustee of the legal
title for the benefit of the society; that is, he took it im-
pressed with the trust.

It is now settled law that the Court of Chancery, before
as well as at and after the statute of Elizabeth, would,
where the uses were charitable and the grantor competent
to convey, aid a defective conveyance to uses. (2 Kent's
Com. 287, and note "A.") And it appears to me that the
Courts of this State, in the exercise of chancery jurisdic-

tion, should certainly not hesitate to aid a defective conveyance where the grantor was competent to convey and the grantee competent to receive, and a beneficiary not only entitled to take the benefit of the use, but has materially contributed to the consideration of the grant.

My deductions from the foregoing premises are: That the association in question, known as the Methodist Protestant Church, of the town of Jefferson, is entitled to claim as a remedy under the condition of affairs shown by the complaint, and consistent with the law applicable to the facts, that the defendant, S. B. Adams, be declared a trustee of the legal title to the land in question, for the use and benefit of the association or church, for the purposes mentioned in the complaint, and that said defendant be perpetually enjoined and restrained from interfering with such use and enjoyment by the association and its members. If this conclusion is correct, the main question raised by the demurrer to the complaint, and the only difficult one in the case, the question whether the plaintiffs have legal capacity to sue, is easily solved. The association could not maintain a suit in its associate name. The several members might unite as plaintiffs and legally claim a remedy, but it certainly would be very inconvenient to do so, and, to avoid such difficulty, the Legislature wisely provided that, where the parties are very numerous, and it may be impracticable to bring them all before the Court, one or more may sue or defend for the benefit of the whole. (Civ. Code, § 381.) This provision is but declaratory of a rule of equity, which had existed long before the adoption of the Code, and which the members of this association were entitled to the benefit of in bringing this suit. The plaintiffs allege that they are the trustees and agents of the association, and claim relief for the benefit of the association and members thereof. I can only regard the suit as brought for the benefit of all the members of the Methodist Protestant Church of the town of Jefferson, and in that view they certainly have legal capacity to sue and enforce the remedy to which the association is entitled. Under this view of the case there is no defect of plaintiffs. It is to be presumed that

this church embraced as many members as churches in general, that are similarly situated, and to bring them all before the Court would be almost impossible. Such a practice should not be tolerated. They are members of the association, and entitled to maintain the suit for the benefit of all the members thereof. (*Beatty* v. *Kurtz*, 2 Peters, *supra*.)

Neither is there a defect of parties defendant. Adams has the legal title, and a full and complete remedy may be had without bringing any of the other parties who have participated in the transaction referred to before the Court. They are not necessary parties to a complete determination of the question involved in the suit.

The Circuit Court, in pursuance of the prayer of the plaintiffs, decreed that the defendant execute a deed conveying the land to said plaintiffs, as trustees of said association, for the use and benefit of the association, or that in default thereof the decree operate as such conveyance, etc. I doubt whether relief to that extent could be legally claimed or granted in this case. I do not think that the plaintiffs had a right to claim any remedy beyond that before stated. But, as that part of the decree is more formal than otherwise and does not affect any substantial right, it may as well be allowed to stand uncorrected in that particular.

The judgment of the Circuit Court should therefore be affirmed.