Argued November 6; affirmed December 16, 1941; rehearing denied
January 20, 1942

## QUINN ET AL. *v.* MARVIN ET AL.

(120 P. (2d) 227)

Before KELLY, Chief Justice, and BAILEY, BELT,
LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Ben Anderson*, of Portland (Anderson & O'Brien, of Portland, on the brief), for appellants.

*Harlow F. Lenon*, of Portland (Hicks & Adams and Edwin D. Hicks, all of Portland, on the brief), for respondents.

RAND, J.  This suit grows out of a controversy between two rival labor organizations, both claiming the right to the possession and control of the funds, records, files and other personal property of the Furniture Makers Local Union No. 1090, which was chartered by the Brotherhood of Painters, Decorators and Paper-hangers of America, affiliated with the American Federation of Labor.  Before this controversy arose, said Local No. 1090 had more than one thousand members, all employees of the Doernbecher Manufacturing Company whose plant was located in the city of Portland.

At that time, the defendants, with one exception, were the duly elected and acting officers of said local. However, in the fall of 1940, Jack Kauffman, one of the defendants herein and an organizer for the United Furniture Workers of America, an organization affiliated with the Congress of Industrial Organization, in-

duced a large majority of the members of said local to sign cards reading as follows:

**"UNITED FURNITURE WORKERS OF AMERICA**
**Affiliated with C. I. O.**

I hereby request and accept membership in the above named union, and of my own free will authorize it, C. I. O., their agents or representatives to act for me as a collective bargaining agency in all our matters pertaining to pay rates, wages, hours of employment and other conditions of employment.''

Among those so signing, were each and all of the then officers of said local, all of whom are defendants herein. Immediately thereafter a meeting of the members of said local was called by the then officers of said local and held on October 3, 1940, at which meeting the following motions were made and carried:

(1) "That Furniture Makers Local No. 1090 Affiliate with U F W A—CIO now", and

(2) "That our old officers, Pres., Rec. Sec., Fin. Sec., and Treas. take care of all outstanding bills. The balance of the fund to be turned over to the U F W A as advance per capita tax".

At said time said local had on deposit in a Portland bank some $5,000 in money and this money was all withdrawn from the bank on the morning following said meeting. $500 thereof was paid by the defendants as a per capita tax on an estimated number of one thousand of the old members of Local Union No. 1090, who, it was assumed, had joined and had become members of said C. I. O. organization, and the balance was used in part in paying the current obligations of said local and the remainder was turned over, in cash and traveler's checks, to one of the defendants, the former treasurer of said local. The defendants, at said time, also took into their possession all the books, records,

files and personal property belonging to Local Union No. 1090 and have since claimed the right to the possession thereof.

However, a small number—fifty or more—of the members of the local refused to sign said cards and those thereof who were present at said meeting voted against the adoption of both of said motions and have at all times since maintained their allegiance to said Brotherhood and to the American Federation of Labor and have ever since continued in good standing as members of the Furniture Makers Local Union No. 1090, under its charter and as an affiliate of the American Federation of Labor. They also have held numerous meetings as members of said local. At one of said meetings, a resolution was adopted which declared that the offices held by the defendants had been vacated because said officers had become members of a dual organization, and these plaintiffs, other than Joseph Clark, were elected to fill said vacancies and have ever since performed the duties thereof.

Before taking such action in vacating the offices of the former officers of said local, upon the advice and under the direction of said plaintiff, Joseph Clark, who had been duly authorized thereto by the General President of the Brotherhood of Painters, Decorators and Paper-hangers of America, said resolution was adopted and the new officers, the plaintiffs herein, were elected.

The plaintiffs, as such officers, individually and on behalf of Local Union No. 1090 and on relation of the Brotherhood of Painters, Decorators and Paper-hangers of America, brought this suit to obtain restitution from the defendants of the funds, files, records and other personal property of Local Union No. 1090,

and, in their complaint, prayed for an accounting and for injunctive relief. From a decree for plaintiffs, the defendants have appealed.

Under section 33 (a) of the constitution of the Brotherhood of Painters, Decorators and Paper-hangers of Amerca, which defines the powers and duties of the general president of the Brotherhood, it is provided that the general president, or his duly accredited representative, is authorized to suspend the officers for misconduct and to appoint others to fill such vacancies.

Under section 88 of said constitution, no member of any local union of the Brotherhood can become a member of any dual organization of painters, decorators or paper-hangers, or a member of a communist organization opposed to the principles of the American Federation of Labor, under penalty of expulsion.

Section 164 of. said constitution provides:

"(a) The funds or property of the local union shall not be divided among the members, individually, but shall remain the funds and property of the local union, for its legitimate purposes, while seven members remain therein; provided, however, that where a majority of the members vote to amalgamate with another local of the Brotherhood, the charters of the locals so voting shall be surrendered to the G.S.-T. and the funds and property shall revert, pro rata, to the local union or unions to which the members transfer.

"(b) Should a local union dissolve, have its charter revoked or withdraw from the Brotherhood, all of its real estate and personal property, of every kind and nature whatsoever, shall be surrendered to the General Secretary-Treasurer and shall forthwith become the property of the Brotherhood of Painters, Decorators and Paper-hangers of America; and all of its books, papers, documents, securities and evidence of ownership of property, together with the seal and moneys,

shall be forwarded to the General Secretary-Treasurer.''

Section 271 (a) provides:

''Any member who acts in violation of his obligation or who violates any article or section of the constitution of the Brotherhood, or of the by-laws of a local union, shall be fined or expelled at the discretion of the local union.''

Section 272, among other things, provides:

''Any officer or member * * * who belongs to or supports dual or communistic organizations, shall be fined or expelled as the local union, district council or other subordinate body may determine.''

The constitution and by-laws of the Furniture Makers Local Union No. 1090 also provides that each member, upon being admitted to membership, shall take an obligation, among other things, as follows:

''I will render full allegiance to this Union, and never consent to subordinate its interests to those of any other organization of which I am now or may hereafter become a member.''

■■ The defendants contend that, notwithstanding their having joined the United Furniture Workers of America, a C. I. O. organization, they are still members of the Furniture Makers Local Union No. 1090, an A. F. of L. organization, and entitled to all the rights and privileges of a member in good standing in that union. Under the provisions of the constitution of the Brotherhood of Painters, Decorators and Paper-hangers of America, with which all members of Local Union No. 1090 are bound to conform, such a dual membership is prohibited. Upon becoming a member of said Local Union No. 1090, each member entered into a solemn obligation that he would abide by and conform to the

provisions of the constitution of the Brotherhood. The obligation thus taken is contractual in its nature and became binding upon each member on his admission into the union. The defendants had the right to withdraw from Local Union No. 1090 if they chose to do so and to join a C. I. O. local but this they could do only on condition that, in so doing, they lost their membership in Local Union No. 1090. Such is the plain meaning and intent of the constitution of the Brotherhood.

The constitution of the Brotherhood further provides that a member of the Brotherhood who violates the constitution in the manner above stated is subject to expulsion, either by the local union itself or by the general president of the Brotherhood, or his accredited representative and, if such member is an officer of the union, his office may, by the same action and for the same reasons, be vacated.

■ In the case at bar, it clearly appears from the evidence that the general president of the Brotherhood authorized and required Joseph Clark, one of the plaintiffs herein and an officer of said Brotherhood, to direct Local Union No. 1090 to vacate the offices held by the defendants herein and that, pursuant thereto, said Local Union No. 1090, by a resolution of the union, did vacate each of said offices and elected plaintiffs, other than Clark, to fill the offices thus vacated and that they are now the duly elected, authorized and acting officers of said union. As such, they, and not the defendants, are authorized, under the constitution of the Brotherhood, to have control and possession of the funds and property of said union.

■ The defendants contend, however, that these offices could be vacated only after trial. There is no provision in the constitution to justify this contention. The

power is always inherent in a local union to determine who shall be the officers thereof. The principles announced and followed in *Carpenters Union v. Backman,* 160 Or. 520, 86 P. (2d) 456, are applicable to the facts involved in this controversy and are decisive in this case.

For these reasons, the decree appealed from is affirmed, but without costs to either party upon this appeal.