Argued October 21, 1953, affirmed February 24, 1954

# LONSFORD ET AL. *v.* BURTON ET AL. and BAILEY ET AL.

### 267 P. 2d 208

*Stuart W. Hill*, of Portland, argued the cause for appellants. On the brief were James L. Means, and Kerr & Hill, all of Portland.

*Thomas H. Tongue, III,* of Portland, argued the cause for defendants-respondents and intervenors-respondents. On the brief were Clif. Langsdale of Kansas City, Mo., and Hicks, Davis & Tongue, all of Portland.

Before LATOURETTE, Chief Justice, and ROSSMAN, LUSK, BRAND, TOOZE, and PERRY, Justices.

BRAND, J.

This is a class suit in equity brought by three members of Local 401 of the International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America "on behalf of themselves and all other members of Local 401," seeking equitable relief from al-

leged interference with the affairs of Local 401 by the International Brotherhood, with which Local 401 is affiliated. Plaintiffs prosecute this appeal from a decree entered in the lower court in favor of the defendants dismissing the cause.

The suit was commenced on 4 May 1951, with the filing of the original complaint. An amended and supplemental complaint was filed by the plaintiffs in the Circuit Court for Multnomah County on 10 July 1951. The complaint alleges that Local 401 is a voluntary, unincorporated association of approximately 140 members; that it is impracticable to bring them all before the court; that plaintiffs Lonsford, Coffey and Osburnsen, being members in good standing, therefore sue on behalf of all except the defendant Burton, and that the plaintiffs "have paid initiation fees and dues into the treasury of said LOCAL which fees and dues, together with the surplus accumulated therefrom in the past, amount to the sum of approximately $300,000." The International Brotherhood is described as a voluntary, unincorporated association and the parent organization of Local 401, and the defendants are identified as officials of the International. Concerning the defendant Burton, it is alleged that he "is a member of the LOCAL. He is also an officer and agent of the INTERNATIONAL, trustee of the funds of the LOCAL, and the officer and agent in charge of the affairs of said LOCAL. He has never been elected by the LOCAL [as] one of its officers or agents, but was appointed by the INTERNATIONAL and is now serving as the only governing officer and trustee of said LOCAL." A printed copy of the constitution and by-laws of the International Brotherhood and of the subordinate lodges or locals is physically attached to and made a part of the complaint. The constitution of the subordi-

nate lodge designates the officers thereof and their duties, and provides that they shall be elected by the subordinate lodges and be responsible to the International. It is further alleged:

"That from the establishment of the LOCAL in Vancouver, Washington, about January 1943, the affairs of the said LOCAL * * * have been administered by representatives of the INTERNATIONAL appointed by the INTERNATIONAL for that purpose and the funds of the said LOCAL have been under the trusteeship of representatives of the INTERNATIONAL appointed by the INTERNATIONAL for that purpose. * * * On or about January 16, 1951 the Governing Board of the LOCAL which had been appointed by the INTERNATIONAL, was dissolved by the INTERNATIONAL, and the said board was notified of that action on January 25, 1951. On the date last mentioned the defendant Harold E. Burton was appointed International Trustee of the LOCAL by the INTERNATIONAL to take over the affairs and funds of the LOCAL. The said defendant is now acting as such International Trustee in violation of the rights of the LOCAL and the members thereof."

It is then alleged that the defendants without right or justification transferred the offices of the Local to Roseburg, Oregon, without the knowledge or consent of the Local, and that the Local will not be returned to Vancouver, Washington, unless ordered to do so by this Court. It is further alleged that the International exercised unlawful control over the affairs and funds of the Local

"by transferring the offices of the LOCAL without the knowledge or consent of the LOCAL or the members thereof, to Roseburg, Oregon, and informing the members of the LOCAL that they could either become affiliated with Local 72 of the International

Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, in Portland, Oregon, or could remain affiliated with the LOCAL at Roseburg, Oregon. Requests for transfer of membership from the LOCAL to Local 72 was made for many members of the LOCAL, but Local 72 has failed to permit affiliation of any members of the LOCAL. The members of the LOCAL do not desire to affiliate with Local 72 and would not have permitted the request for affiliation to be made for them had they known they had any choice in the matter excepting to affiliate with Local 72 or to remain affiliated with the LOCAL at Roseburg, Oregon. * * *''

Plaintiffs allege that many members of the Local, including the three named plaintiffs, reside and work in Vancouver, and are unwilling to move to Roseburg. Fear is expressed that unless the Local is retransferred to Vancouver, the plaintiffs will be unable to exercise the rights given them by their membership. The complaint sets forth the following provision of the subordinate lodge constitution:

"Article XV, Section 2: 'The funds and property of the subordinate lodge shall be trust funds for the benefit of its members and shall not be divided in any manner among the members of the subordinate lodge.'

"Article I, Section 9: '* * * No money shall be drawn out of such depository * * * and no amounts shall be withdrawn or security engaged without the consent of a majority of the members in good standing at the meeting of the subordinate lodge.' ''

It is asserted that the defendants, through the defendant Burton, have removed the funds, are improperly administering them, and are depriving the plaintiffs of benefits which would be derived from the

maintenance in Vancouver of a labor union. It is further alleged that the defendants have deprived Local 401 of all of its jurisdiction which was given to it under its charter, and that such jurisdiction has been transferred to Local 72 of Portland, Oregon. Lastly, it is alleged that since the filing of the original complaint, the defendants have been and now are attempting to expel from membership certain members of said Local without any hearing, and without just cause. The prayer is for an injunction restraining the defendants from interfering with the Local, and from maintaining the office of the Local at any place other than Vancouver, and from expelling the plaintiffs. They seek an accounting and receiver and a restoration of the funds of the Local.

The three specifically-named defendants filed an answer on behalf of themselves only, and not on behalf of any other members of the International. In addition to formal matters, the defendants admit that the affairs of the Local have been administered by representatives of the International, and that no meetings of the Local have been held and no officers elected, and that Harold E. Burton was appointed by the International as trustee to administer the affairs of the Local. They admit that the charter of the Local has been moved to Roseburg, Oregon, and will not be returned to Vancouver. They admit that the jurisdiction formerly given to Local 401 was taken away and given to Local 72. The defendants admit that the defendant Burton declined to accept monthly dues from the plaintiff Lonsford, and from one John Stucklik because they were residing within the jurisdiction of Local 72, but defendants allege that the said Lonsford and Stucklik were permitted, and did, pay their dues to the International. The defendants further allege that the plain-

tiffs have failed to exercise the right of appeal to the executive council of the International and that the court has no power to intervene in the dispute. They allege that any order such as that prayed for in the complaint would abridge the constitutional rights of the members of the International peaceably to assemble and would impair the obligation of the contract between the local union and the International and would deny to the defendants due process of law. As a separate defense, it is alleged that at no time since the formation of Local 401 in 1943 has there been any request or demand by the Local, or by any of its members, for the holding of meetings or the election of officers or any objections to the conduct of the affairs of the Local, except as indicated by the filing of the complaint.

As a fifth separate defense, it is alleged that on 12 June 1951 an order was duly entered in the United States District Court for the District of Kansas, in the nature of a restraining order, and appointing a receiver to supervise certain funds of Local 401, and that after hearing in open court, the provisions of the said order were, on 6 July 1951, continued in effect. The orders of the federal court are set forth as exhibits to the answer. The reply was in the nature of a general denial, except that they admit that the orders of the federal court were made as alleged in the answer.

On 5 September 1951 eight separate documents purporting to be petitions in intervention were filed by members of Local 401, in opposition to the complaint of the plaintiffs. Ninety-five persons who are members of Local 401 have signed one or more of the petitions which were allowed as such by an oral order of the court during the progress of the trial. The plaintiffs filed a general denial to the petitions in intervention.

The petitions and their effect will be considered at a later point in this opinion.

A brief review of the facts, as we find them to be, is necessary for an understanding of the legal problems involved.

It appears from the testimony brought out in this case that Local 401 was organized during the war when the Vancouver shipyards were in full operation. Local 72, affiliated with the same International Brotherhood, with offices in Portland, Oregon, had territorial jurisdiction over the Vancouver shipyards under its charter, but because of racial difficulties brought on by the great influx of workers to the Portland-Vancouver area during the war, Local 72 insisted that another local be established in the area. It appears also that Local 401 was only to continue in existence for the period of the emergency and that the International Brotherhood and Local 72 had an understanding that that part of the Vancouver jurisdiction taken from Local 72 was to be returned to it upon the cessation of shipbuilding in the Portland-Vancouver area. At the time of trial there was no shipbuilding at Vancouver and there had not been for some time. Although the number of members in Local 401 during the peak of activity in the shipyards numbered many thousands, the present membership is approximately 133, a majority of whom are presently living in Oregon and Washington. The rest are scattered throughout a number of other states.

We quote with approval from the opinion of Judge Crawford in the trial court, in which he set forth his findings and conclusions:

"* * * It appears no officers have ever been elected by 401; no meetings of the membership have ever been held, and complete control has been exercised by a governing board appointed by the Inter-

national president. 401 Vancouver, as stated, was exclusively devoted to the shipbuilding industry, Local 72 Portland retaining its jurisdiction over the Vancouver area otherwise. When shipbuilding ceased, Local 72 Portland requested return of the Vancouver area and this was accomplished January 16, 1951, when the governing board of 401 Vancouver was dissolved by the International and the defendant Harold E. Burton was appointed International Trustee of 401 by the president of the International and the offices of 401 removed to Roseburg. The reasons assigned for this action were the cessation of shipbuilding, the lack of other work in the Vancouver area, the understanding with Local 72 Portland, and the need for a Local in Roseburg.

"It appears plaintiffs actually represent not to exceed three members of 401 and that some 85 members joined in opposing plaintiffs' contentions and objections. It also appears funds have been accounted for and that some $300,000 of assets of Local 401 are now held in the Brotherhood Bank in Kansas City, Kansas, in trust for Local 401, and that the International claims no part of such funds (same are now in possession of receiver appointed by the United States District Court for the District of Kansas). 401 Roseburg is now operating under an amended charter; an International trustee is organizing the area with some 60 present members out of a potential of 300; the International proposes to proceed with organization and election of officers at some future date. It further appears that there has been no work in the Vancouver area for some four or five years and that the members of 401 may pay dues to 401 Roseburg or the International, or may affiliate with Local 72 Portland; that insurance and other rights are fully protected; that the money belonging to 401 is held by the International and the receiver above referred to for the benefit of said Local; that on organization of 401 Roseburg funds will be returned from Kansas City to said Local (statement of Clif. Langsdale) and

that said funds are now in the Brotherhood Bank at Kansas City, temporarily; that the International trustee is temporarily in control; that there is no denial of right to negotiate with employer as this is done by the Pacific Coast Metal Trades Council; and that negotiations with other crafts is an International function; that no right of employment is jeopardized, as such employment was exclusively related to shipbuilding operations which terminated several years ago.''

■ In their opening brief plaintiffs state as the theory of their case that they are bringing a class suit by the members of Local 401 against members of the International Brotherhood. Our first duty is to determine whether the plaintiffs have established by pleading and proof that they are entitled to maintain a class suit. The trial court held that they were not entitled to do so, and that ruling is the basis of the first assignment of error. Our statute provides:

"Of the parties to the suit, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any one who should have been joined as plaintiff can not be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impractical to bring them all before the court, one or more may sue or defend for the benefit of the whole." OCLA, § 9-106 (ORS 13.170.)

The portion of the section authorizing class suits is substantially identical to the statutes of other states, and is commonly recognized as the codification of the rule of equity pleading first adopted by the Courts of Chancery of England which permitted class or representative suits in certain cases. *Trustees of M. E. Protestant Church v. Adams,* 4 Or 76. As stated in

*Hansberry v. Lee,* 311 US 32, 41, 61 S Ct 115, 118, 85 L ed 22, 27:

"The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable. Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree."

■ It is generally held that in a proper case a few members of a class may sue or defend for the whole. The question at issue is whether this is a proper case. Plaintiffs rely upon Restatement, Judgments, Sections 26 and 86 which read as follows:

"Where a class action is properly brought by or against members of a class, the court has jurisdiction by its judgment to make a determination of issues involved in the action which will be binding as res judicata upon other members of the class, although such members are not personally subject to the jurisdiction of the court." Restatement, Judgments, § 26.

"A person who is one of a class of persons on whose account action is properly brought or defended in a representative action or defense is bound by and entitled to the benefits of the rules of

res judicata with reference to the subject matter of the action." Restatement, Judgments, § 86.

They do not cite Section 116 of the same treatise which reads as follows:

"Subject to general equitable considerations (see §§ 127-130), equitable relief against the effect of a judgment rendered in a class action will be granted to a person who is a member of the class but who is not a party to the action, if the proceedings were not conducted with due regard for his interests." Restatement, Judgments, § 116.

From the comment on this section we read:

"Where a person is not a party to a class action the judgment therein has conclusive effect against him only if his interests were adequately represented. * * *" Restatement, Judgments, § 116, Comment b.

*Robinson v. Nick,* 235 Mo App 461, 136 SW2d 374, is cited by the plaintiffs and later analyzed herein:

"* * * The underlying principle upon which the rule proceeds is that those few who become parties to the suit, in representing themselves, also represent the others of the class from which they come, and because of such community of interest, in protecting their own interests, will likewise be expected to protect the interests of the others." *Robinson v. Nick,* 235 Mo App 461, 136 SW2d 374, 385.

In *Kimes v. City of Gary,* 224 Ind 294, 66 NE2d 888, referring to a class action, the court said:

"* * * If there is any failure of community of interest or any conflict of interest, existing or potential, between the representative and any member of the class the action is improper. 132 A.L.R. 753, and cases there collected."

The court also held that "class actions should be closely scrutinized and should be permitted only in clear cases. * * *"

The following cases support the general proposition that the interest of the plaintiffs and that of the persons represented by them must be so identical that the motive and inducement to protect and preserve may be assumed to be the same in each. *Archer v. Musick,* 147 Neb 344, 23 NW2d 323; *Pelelas v. Caterpillar Tractor Co.,* 113 F2d 629 (CCA 7th); *Los Angeles County v. Winans,* 13 Cal App 234, 109 P 640; *Goodloe v. Woods,* 115 Va 540, 80 SE 108; *Nunnelly v. First Federal Bldg. & Loan Ass'n of Ogden,* 107 Utah 347, 154 P2d 620; *Hansberry v. Lee,* supra; 311 US 32, 85 L ed 22; 39 Am Jur 921-2, Parties, §§ 47, 48; 67 CJS 921, Parties, § 13; *Oglesby v. Springfield Marine Bank,* 385 Ill 414, 52 NE2d 1000; *Pacific Fire Insurance Co. v. Reiner,* (La) 45 F Supp 703; *Behrman v. Egan,* 9 NJSuper 171, 75 A2d 627; *State v. Laramie Rivers Co.,* 59 Wyo 9, 136 P2d 487; *Langson v. Goldberg,* 373 Ill 297, 26 NE2d 111; *South East Nat. Bank v. Board of Education,* 298 Ill App 92, 18 NE2d 584.

In *Archer v. Musick,* supra, the court said:

"* * * An action may not be maintained as a class action by a plaintiff in behalf of himself and others unless he has the power as a member of the class to satisfy a judgment in behalf of all members of the class. * * *"

In *City of Lakeland v. Chase Nat. Co.,* 159 Fla 783, 32 So2d 833, the court said:

"It has been authoritatively stated:

" "* * * An allegation that the plaintiff brought suit on his own behalf and in behalf of all others similarly situated does not, of itself, determine the character of the proceeding as a class suit, and does not establish such community of interest as would enable the plaintiff to represent the other persons interested in the subject matter. * * *'" 39 Am. Jur. pp. 960-962.

"In class suits it is important to plead and describe the class with certainty whether the class be plaintiffs or defendants and if they are considered so numerous as to make it impractical to bring them before the court it too should be plead and proved with a fair degree of certainty. More is required than the mere pleading the language of the statute."

See also *Matthews v. Landowners Oil Ass'n.,* Tex Civ App, 204 SW2d 647. And see Annotation, 132 ALR 749.

A case analogous to the one at bar is *Maxwell v. Brougher,* 99 Cal App2d 824, 222 P2d 910, involving a question of church discipline. The court said:

"* * * Notwithstanding his assertion that he is acting on behalf of the entire congregation, throughout the amended complaint he refers to a division of sentiment, one faction sustaining the pastor, the other seeking his removal. He avers such a conflict of interest that there can be no virtual representation by himself for the entire congregation since the interests of the representative and the represented must 'be so identical that the motive and inducement to protect and preserve may be assumed to be the same in each.' "

The authority of the cases cited supra is recognized in Restatement, Judgments, § 86, p 422, comment f. We quote:

"The rule stated in this Section operates only as to persons whose situation with reference to the matter involved in the suit is substantially identical with that of the person who represents them. There must be a right or liability which is common to the class and there must be some common relief which if granted would be beneficial to all or create liability against all. * * *"

The plaintiffs rely upon the following decisions: *Trustees of M. E. Church v. Adams,* 4 Or 76; *Liggett*

*v. Ladd,* 17 Or 89; *Carpenters Union v. Backman,* 160 Or 520, 86 P2d 456; *Quinn v. Marvin,* 168 Or 52, 120 P2d 227; *Mursener v. Forte et al.,* 186 Or 253, 205 P2d 568; *Gieske v. Anderson,* 77 Cal 247, 19 P 421; *Citizens Banking Co. v. Monticello State Bank,* 143 F2d 261 (CCA 8th); *Snyder v. Murphy,* 333 Pa 305, 5 A2d 226; *Stimson v. Lewis,* 36 Vt 91; *Holthoff v. State Bank & Trust Co.,* 208 Ark 307, 186 SW2d 162.

We have no criticism of the cases thus cited. They recognize the right in a proper case to bring a representative suit, but they do not discuss the principles set forth in *Kimes v. City of Gary,* supra, and in the many other decisions which we have cited in support of the rule stated in that case, nor did the pleadings or evidence present issues analogous to those which appear in the pending case.

A further review of the facts is required insofar as they bear upon the defendants' contention that the case was not properly brought as a class or representative suit. The three named defendants answered the complaint ''on behalf of themselves only and not on behalf of any or all other members of International Brotherhood * * *.'' No other answer was filed purporting to present the case of the International. The three named defendants did, however, by cross-examination, adduce evidence in opposition to the plaintiffs' claims and in apparent support of the position of the International.

In view of the authorities which we have cited, the direct assertion that the named defendants did not appear in behalf of the members of the International raises some question as to whether we can assume that the members of the International have been duly represented. This difficulty would not have arisen if the

decisions of this court had followed the rule laid down in *United Mine Workers v. Coronado Coal Co.*, 259 US 344, 66 L ed 975, wherein Chief Justice Taft, for a unanimous court, held that under the federal practice, unincorporated labor unions are suable as such. Under such a rule the right and duty to defend for the union would clearly rest in the governing body of the union. This court has not as yet adopted the rule of the Coronado case, and despite doubts, we shall treat the answer of the named defendants as an answer made on behalf of the International.

Thirty-one persons filed a "Petition on Behalf of Defendants" which stated "That we and each of us insofar as we are concerned have no objection to the transfer of Local 401 from Vancouver, Washington, to Roseburg, Oregon." Forty-four persons, members of Local 401, filed a "Petition on Behalf of Plaintiffs." They allege:

> "That we and each of us insofar as we are concerned have not authorized the institution of the said suit and do hereby declare that we do not desire to appear as parties plaintiff nor to be represented by the said Elmer L. Lonsford, Ira Coffey and Clarence S. Osburnsen;
> "That we and each of us do hereby expressly declare and set forth that our views are not in accordance with the views set forth in said complaint by the said Elmer L. Lonsford, Ira Coffey and Clarence S. Osburnsen and particularly the relief prayed for in the complaint."

Eighty-five persons joined in filing "Petitions for Leave to Intervene and to Dismiss Complaint". They, as members of Local 401 allege in part:

> "* * * That the above entitled suit was filed at the instigation of members and officers of Local 72 of said International Union; that Local 72

has an interest to preserve jurisdiction over the area adjacent to Roseburg, Oregon, which was previously a part of the jurisdiction of Local 72, but which was taken from Local 72 and given to Local 401 at the time of the action by said International complained of by the complaint herein; that certain of the named plaintiffs herein are working under the jurisdiction of Local 72 and are associated with members and officers of Local 72 and have in mind the interests of said Local 72 above and beyond the interests of the membership of Local 401; that none of the named plaintiffs are working at the trade of boilermakers within the jurisdiction of Local 401 and at least one of said plaintiffs has moved from the West coast and has no substantial interest in this case; that for the foregoing reasons there is no assurance that the interests of remaining members of Local 401 will be fairly or adequately represented by the named plaintiffs herein or that all of the facts bearing on said controversy will be brought to light by plaintiffs in said cause. That each of the undersigned expressly states that his views and interests are not in accordance with the views and interests set forth in said complaint or with the relief prayed for in said complaint, but that the undersigned and each of them deems it to his interest to have the jurisdiction of Local 401 moved from Vancouver, Washington, where its jurisdiction was limited to shipyard operations no longer in existence, and moved to the Roseburg area in the State of Oregon, where work may be developed in the boilermaker trade in which the undersigned may desire to engage and deem it to their interest to have developed as the result of the program of said International Union in moving the jurisdiction of Local 401 from Vancouver, Washington to Roseburg, Oregon; and that the interests of the named plaintiffs in this case are hostile and adverse to the interests of the undersigned and each of them and that there is no community of interest between the undersigned and the named plaintiffs herein.''

There is much duplication of names in the various petitions. At the trial the court ruled that these various and unique instruments were petitions in intervention and authorized the plaintiffs to answer them. Both parties have treated them as such petitions. The plaintiffs filed a general denial to the allegations in the several petitions. No answer or reply to the petition in intervention was filed by the named defendants. The petitions were also received in evidence as exhibits.

The evidence establishes that during the war period when the Kaiser Vancouver shipyard was operating, Local 401 had a membership of more than 15,000 and had accumulated more than $300,000 as of August 1950. After the closing of the shipyard, there being no work, the membership fell to 133. Of the total of 133, 95 appear on one or more of the petitions. Only 96 members live within approximately 100 miles of Vancouver. The rest are scattered over 10 states of the union and only two of them have been "contacted" in this case. There is convincing evidence in support of the allegations of the 85 intervenors to the effect that the suit was filed at the instigation of members of Local 72 of Portland in support of the efforts of that organization to maintain jurisdiction over 11 counties in Oregon which had been placed under the jurisdiction of Local 401 when the last-named Local was transferred from Vancouver to Roseburg, Oregon. The president of Local 72 testified: "we wanted the local [401] to come back here, along with the money". He testified further that a committee of three was appointed to make contact with members of 401.

We find no evidence of the filing on behalf of the members of Local 401 of any protest against the manner in which the Local had been managed during its entire history and no protest or appeal was ever made

on behalf of members of Local 401 on account of the transfer of union headquarters to Roseburg or the change of its territorial jurisdiction, until after the efforts of Local 72 to persuade the named plaintiffs to bring this suit for the alleged and purported benefit of members of Local 401. The plaintiff Lonsford testified that the three named plaintiffs were the only ones who had taken an interest in furthering the lawsuit. He continued:

"Q. This interest of yours didn't arise until this committee of Local 72 called upon you?

"A. Well, I didn't know anything about it, that is right.

"Q. After they called on you, then you got some interest and came around and filed the lawsuit, is that correct?

"A. That is right, because I figured they done us wrong."

He further testified concerning a conversation had with one of the members of the committee which was acting for Local 72. We quote: "So I asked them if they knew a good lawyer and they said sure." Plaintiff testified that he had paid $50 toward costs of the suit but had not agreed to pay attorney's fees. At another point he testified as follows:

"Q. Just one more question: I wish you would tell us what this committee of Local 72 told you that they had done to you?

"A. Well, that is as far as I can remember. They asked me did I know, and I gave them that little book and they said, 'Read this and see for yourself, and whatever you need, we will help you.' I asked them if they would help me and they said yes, as one friend to another.

"Q. You say they said they would help you in it?

"A. Sure, they said they would help me get a

lawyer. I said, 'Do I need a lawyer?' And they said, yes; and—

"Q. Did they help to get you one?

"A. Yes, they introduced me."

The vital interest of Local 72 in this controversy is established beyond question. That organization sent a delegation to the International conference asking that the shipyard be returned to Local 72. The president of Local 72 testified that several times they had tried to consolidate Locals 72 and 401. The evidence also shows that members of Local 401 were notified that they might transfer to Local 72 or might remain in 401 after its removal to Roseburg. Sixty-five members elected to transfer to Local 72. We quote from plaintiffs' brief:

"* * * About 66 of the members of this local chose to be affiliated with Local 72, but they no doubt did so only because they felt it would be more convenient than being members of Local 401 in Roseburg. They were never accepted as members by Local 72. Lonsford testified that he would not have elected to become affiliated with Local 72, if he had known he did not have to make an election."

The 65 did not become members of Local 72 because that organization refused to accept their transfer cards, and chose rather to attempt to secure their objectives by inducing members of Local 401 to institute this litigation.

We are convinced that Local 72 is the moving spirit in this case which represents one more chapter in the long history of litigation in which they have been involved. No one appears in this case for and on behalf of Local 72, but their activity raises serious questions as to whether the named plaintiffs herein are in reality representing the best interests of Local 401 or those of Local 72.

■ What the plaintiffs are attempting to do is to force the intervenors to litigate questions which the latter have emphatically stated they do not wish to litigate. Plaintiffs then fall back on the proposition that they still represent the 35 union members of Local 401 whose position and whose interests are wholly unknown. The distinction between stockholders suits and suits by a few members for and on behalf of an unincorporated association, is pointed out in *Roberts v. Kennedy,* 13 Del Chanc 133, 116 A 253. The plaintiffs are not required to allege or prove that they have requested the union to prosecute this proceeding as a condition precedent to the bringing of this representative suit. The rule applied in stockholders suits does not apply to class or representative suits. There is, nevertheless, a significant analogy between the two types of suit. The right of a stockholder to bring suit is not absolute, but is qualified, as indicated by the following authorities:

"The mere fact that a corporation has a cause of action for an injury does not always make it incumbent upon it to sue, anymore than in the case of an individual. If, in the opinion of the directors or a majority of the stockholders, the best interests of the company do not require it to sue, it need not do so. The matter ordinarily is within their discretion, and if they act in good faith, their refusal to sue violates no right of dissenting stockholders, so as to entitle them to maintain a suit in their own behalf. The exercise of such discretion by the directors will not be lightly set aside by the court, and where a stockholder complains of such action of the directors the court will consider the circumstances, and, if no bad faith is shown, will decline to substitute the judgment of the stockholder for that of the managing directors." 13 Fletcher, Cyclopedia, Corporations, Perm Ed, § 5822, p 147.

To the same effect is *Goodwin v. Castleton*, 19 Wash2d 748, 762, 144 P2d 725, 732:

> "It does not follow from what has been said in this connection, however, that a stockholder or a minority group of stockholders may impose their unbridled will upon the officers or directors of a corporation by launching the corporation into litigation for the purpose of obtaining for it certain benefits which the complaining parties deem to belong or be due to the corporation. Business policy may dictate that, under certain circumstances, it would be unwise or unprofitable to insist upon one's rights, and accordingly the directors of a corporation or the majority of its stockholders may decline to bring or maintain a suit which a single stockholder or a minority group believe should be instituted."

The effect of the rule is that in the case where the corporation refuses to sue to enforce a right, a stockholder may institute the action, but only where it can be shown that those responsible for the management of the corporation have been guilty of fraud, bad faith, or an abuse of discretion in refusing to institute proceedings. The good sense of the rule with respect to incorporated organizations can be readily seen, for the management of the corporation should not be unduly interfered with by stockholders who differ as to business policies in those matters which are discretionary with the directors of the corporation.

■ In representative suits such as this, and in stockholders suits, the plaintiff is seeking a remedy which benefits the members of the unincorporated association as a whole, on the one hand, and the stockholders as a whole, on the other. The court will not permit stockholders to take unto themselves the enforcement of

rights which normally belong to a corporation except where there is bad faith, fraud, abuse of discretion or the like, on the part of the directors. On similar principles in a representative suit the court will examine pleadings and evidence to determine whether it is appropriate that a few should act for and bind all. Our conclusion is that the trial court was well within its powers and that it exercised a sound judgment in holding that the proceedings should not be entertained as a class or representative suit. In basing our decision on this point, we do not mean to express any opinion adverse to the finding of the trial court upon the merits, or adverse to the contention of the defendants that the plaintiffs should have exerted their remedies within the organization before bringing this suit. *Way v. Patton*, 195 Or 36, 241 P2d 895. Upon the merits, a major issue relates to the legal power of the International to "amend" the charter of Local 401 in respect to jurisdiction. This is a clear question of law under the constitution of the International. That constitution provides:

> "The International President shall hear and decide all questions of constitutional law submitted to him by any District, State or Subordinate Lodge, and all decisions shall be binding until finally passed on by the Executive Council, or the International Brotherhood Convention." Constitution and By-Laws of the International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, Art V, § 10.

There is substantial evidence in the record indicating a practical construction of the constitutional provision authorizing such changes in jurisdiction under the power to amend.

■ Plaintiffs allege in the complaint that the defendants are "attempting to expel from membership certain members without just cause." Specifically they refer to the refusal to accept monthly dues from Elmer Lonsford. This suit was brought as a purported representative proceeding. The other members of the Local are not concerned with the alleged "attempt", whatever that means, and the suit having failed as a class or representative one, we deem it unnecessary to inquire concerning the alleged grievance of the plaintiff Lonsford individually. The appellate procedure of the International is available to him if he desires to press his claim.

The decree is affirmed. Neither party shall recover costs.